George A. Roland J.
Defendants are charged with violating subdivision 6 of section 381 of the New York Vehicle and Traffic Law which requires that any person operating or riding upon a motorcycle shall wear a protective helmet. The introduction to Part 54 of the applicable regulations states (15 NYCRR 54.1): "The operation of motorcycles has been found to result in a high incidence of disabling personal injuries. The effects of such injuries extend beyond the person injured to the family of the person injured and to the people of this State. Any disabling injury may have an economic impact on the public by requiring the furnishing of medical, rehabilitative or welfare aid or assistance * * * the prevention * * * [of such injuries] is deemed to be a legitimate concern of this State.”
There is no dispute as to the facts of noncompliance with the statute on the part of each of the defendants. They argue, however, that the statute is an impermissible invasion of their privacy and should be declared unconstitutional. In brief, their argument runs as follows:
*383 1. The statute was enacted only to qualify the State for Federal highway construction funds.
2. The legislation is invalid because it is "special legislation” and discriminatory.
3. There is no rational basis between the statute and the purposes intended.
4. The legislation is not a proper exercise of the police power of the State.
With respect to the first argument it is of no importance that the triggering device was the desire to qualify for Federal highway funds. Health and safety legislation usually come about because of some special event or occurrence which calls attention of the Legislature to the problem or evil to be corrected. That the Federal Government thereafter amended the Transportation Act and eliminated the requirement for a compulsory helmet law is of small significance and merely indicative of a change of mind by Congress for reasons known only to them.
The argument respecting "special legislation” does not appear to be substantial. The class upon which the statute falls is a large one, clearly identifiable, and the statute operates upon all of them equally and without exception. Health and safety regulations usually point to certain groups, such as labor. in dangerous employment, businesses that affect the public interest, transportation vehicles, etc. So long as the statute operates with like effect upon all in the class for a public purpose it does not come within the Fourteenth Amendment. (Barbier v Connolly, 113 US 27; Matter of Engelsher v Jacobs, 5 NY2d 370.)
Respecting the third point the court has read all of the statistical exhibits submitted by the parties and has come to the conclusion that the legislation could have gone either way. But it was certainly not unreasonable for the Legislature to come to a belief that a cyclist falling to the ground at great speed will sustain greater personal injuries to his head without helmet than with one. Although the courts at times may differ with the Legislature, they may not substitute their judgment and reject the legislation unless it is clearly in excess of the legislative power under the Constitution. Such excess of power is far from proven even if the court considers the facts and opinions submitted by the defendants. On this point see the opinion in Jacobson v Massachusetts (197 US 11) *384 referred to below, with reference to the offer of proof. The law is clear that the Legislature is primarily the judge of the necessity of the legislation and every possible presumption is in favor of its validity. (Wiggins v Town of Somers, 4 NY2d 215.)
In Jacobson the court cited Matter of Viemester v White (179 NY 235) in which the court referred to conflicting opinions as to whether vaccination was harmful or would tend to eliminate smallpox but concluded that the Legislature need not be 100% certain of a desired result. It would be sufficient if the legislation was believed to have such a result and common knowledge was supportive of such belief. Also in Jacobson (supra, p 30) the court observed: "We must assume that when the statute in question was passed, the legislature of Massachusetts was not unaware of these opposing theories, and was compelled, of necessity, to choose between them.”
The police power has been defined as "the power of promoting the public welfare by restraining and regulating the use of liberty and property”, but to be regarded as a valid exercise of governmental power in the interest of health, safety, morals, comfort or general welfare, it must be exercised within constitutional limits. In Barbier v Connolly (113 US 27, 31, supra) Mr. Justice Field spoke of the police power as the power "to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and property.”
Defendants argue however that their health and safety affects only them and that the public and the public welfare is not involved. They claim the right of privacy, the right "to be let alone” (Mr. Justice Brandeis, in Olmstead v United States, 277 US 438, 478). Unfortunately the right of privacy is not absolute and unlimited in our society (Mr. Justice Blackmun in Roe v Wade, 410 US 113 in which State laws restricting the right to abortion were declared unconstitutional).
The right to operate a motorcycle on the public highways is not such a "fundamental right” as to require that regulation may be justified only by a "compelling State interest”. Although protection of a sizable portion of the public. against "self-inflicted” injuries may not be within the category of a "compelling State interest”, it is clearly within the fundamental obligation of the State of protecting not only the individuals involved but also the public interest. A person’s health is a *385 part of the concerns of society (Mr. Justice Douglas, concurring in Doe v Bolton, 410 US 179, 215). Furthermore in our interdependent society the welfare of each of us too often depends upon the acts and conduct of others.
Today we have no-fault insurance which casts upon the public the cost of medical care, unemployment, rehabilitation, etc. without regard to the fault or negligence of the person injured. Insurance premiums are affected, taxes to support welfare costs are affected, unemployment taxes are affected, family relations and family life are affected. To say that only the injured cyclist is affected is nonsense.
In an old case, German Alliance Ins. Co. v Lewis (233 US 389) the court sustained legislation fixing fire insurance premium costs under the police power of the State on the ground that each policy was not individual but had some effect upon all other policyholders and the public at large. The court quotes Lord Chief Justice Hale (p 408), " 'that when private property is "affected with a public interest, it ceases to be juris privati” only’ ” and it becomes " 'clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large’ ”.
The above opinion is clearly applicable to the case at bar and all we have to do is substitute the word "conduct” for the word "property”.
Arguments similar to those made by the defendants in this case were made in Jacobson v Massachusetts (197 US 11, 26, supra) (compulsory vaccination upheld) where the court observed: "But the liberty secured by the Constitution of the United States to every person * * * does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others * * * 'The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to *386 the safety, health, peace, good order and morals of the community.’ ”
In Buck v Bell (274 US 200, 207) the court upheld legislation directing the sterilization of certain mental defectives as within the police power of the State, Mr. Justice Holmes observing "Three generations of imbeciles are enough”.
Rarely have laws designed to protect the health and safety of individuals and the public at large been declared unconstitutional. The burden is a strong one and the defendants have not met that burden in this case. On the contrary the statute appears to be well founded and there is a clear and rational basis between it and the purposes intended.
It is true as defendants say, that there are many other facets of human behaviour which adversely affect the public health, welfare and safety and which merit the attention of the Legislature, e.g., smoking, drinking, drug use etc. But because the Legislature has addressed itself to the matter at issue does not mean to say that unless all of the other activities are also dealt with, the selected regulation (helmets) is arbitrary or discriminatory. The Legislature is unrestricted with respect to which matters and problems it will deal with.
It is also true that many State courts have declared the legislation unconstitutional, but there are just as many, if not more, that have upheld the legislation. But as indicated above, the issue is not one without doubt and the court must accord the statute the presumption of constitutionality. (People v Pagnotta, 25 NY2d 333.)
The defendants are found guilty and are each fined the sum of $10.