[No. G012245. Fourth Dist., Div. Three. June 30, 1993.]

TIMOTHY BUHL et al., Plaintiffs and Appellants, v.
MAURICE HANNIGAN, as Commissioner, etc., et al., Defendants and
Respondents.

## COUNSEL

Lascher & Lascher, Mathew P. Guasco, Wendy C. Lascher, Matthew P. Guasco and Susan B. Lascher for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Acting Assistant Attorney General, Martin H. Milas and Thomas Scheerer, Deputy Attorneys General, Terry C. Andrus, County Counsel, Barbara H. Evans, Deputy County Counsel, Edward J. Cooper, City Attorney, and Paul R. Coble, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**SONENSHINE, J.**—Plaintiffs and Appellants Timothy Buhl, Jerald Bowman, Guru Bir Singh Khalsa and Peter Daniels appeal from a court order denying their motion for a preliminary injunction.[1] Plaintiffs seek to enjoin the state from enforcing California's Mandatory Motorcycle Helmet Law, Vehicle Code section 27802 et seq.[2] (helmet law) during the pendency of their action to have the law declared unconstitutional. Defendants and respondents, sued in their official capacities, are Maurice Hannigan, Commissioner of the California Highway Patrol (CHP), Frank Zolin, Director of the Department of Motor Vehicles (DMV), Brad Gates, Sheriff of Orange County, and Paul Walters, Chief of Police of Santa Ana.

Appellants contend the helmet law is unconstitutionally vague. They further claim it impermissibly discriminates against the handicapped, interferes with the free exercise of religion, and infringes on the individual's right

---

[1] This is the second appeal in this matter. Appellants appealed from the court's refusal to issue a temporary restraining order (No. G011986). That appeal was dismissed when appellants moved for a preliminary injunction.

[2] All further statutory references are to the Vehicle Code unless otherwise specified.

to privacy and freedom of expression. They argue the intrusion is not justified by any legitimate state concern. They contend if the injunction does not issue, they will suffer irreparable harm in that they will be forced to choose, during the pendency of the action, either to ride without their helmets, and thus risk being ticketed for traffic violations, or to forego motorcycle riding entirely.[3]

### Standard of Review

■ The trial court has wide discretion to decide whether to issue a preliminary injunction; its denial of relief must be affirmed in the absence of abuse of discretion. (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1226 [240 Cal.Rptr. 829, 743 P.2d 889].) We reverse only if the court has acted arbitrarily or capriciously, beyond the bounds of reason. (*In re Cortez* (1971) 6 Cal.3d 78, 85 [98 Cal.Rptr. 307, 490 P.2d 819].)

On a request for a preliminary injunction, "the trial court must consider 'two interrelated factors,' specifically, the likelihood that plaintiffs will prevail on the merits at trial, and the comparative harm to be suffered by plaintiffs if the injunction does not issue against the harm to be suffered by . . . [the people of the State of California] if it does." (*King* v. *Meese, supra,* 43 Cal.3d 1217, 1226.) The order is affirmed "if either the balance-of-hardships analysis or plaintiffs' likelihood of success considerations would alone support the ruling. [Citation.]" (*Id.* at p. 1227.) But when the trial court's decision is based on only one factor—here, the likelihood of success, —we must decide if that ground conclusively supports the order. (*Ibid.*)

In examining the likelihood-of-success factor, we consider the legal merits of the underlying claims. ■ We start with the presumption that legislation regulating motorists' rights is constitutional. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 76-78 [177 Cal.Rptr. 566, 634 P.2d

---

[3]Appellants are described in the complaint and in their declarations:

Timothy Buhl, a former Marine, has been riding motorcycles since 1987. He has completed a motorcyclist safety course and an experienced rider's course. He chooses not to wear a helmet for personal reasons, such as his "belief, as a matter of personal liberty, that individuals should be free to make their own choices concerning personal safety." He intends to ride without a helmet "to express to others a message about what freedom means."

Jerald Bowman has ridden motorcycles for 35 years. He rides a motorcycle to and from work. He is hearing-impaired and wears hearing aids which, under a helmet, produce a high-pitched feedback. If he must wear a helmet, he may have to give up motorcycle riding.

Guru Bir Singh Khalsa began riding a motorcycle in 1969, for "economic, ecological, and personal reasons." As a Sikh, he is forbidden from appearing in public without his hair tied in a Rishi knot and concealed in a turban. He cannot fit his helmet over the knot and turban; thus, if he is to remain faithful to his religion, he must abandon motorcycle riding.

Peter Daniels is a Los Angeles businessman and father of four, a longtime motorcyclist who has completed an advanced safety course.

917].) The helmet law constitutes an exercise of the state's police power, therefore " '*we simply determine whether the statute reasonably relates to a legitimate governmental purpose.*' " (*Id.* at p. 78.) We do not judge the wisdom of the law; we find it valid if, under *any* reasonable set of facts, it is rationally related to a proper legislative goal, here, ensuring the welfare and safety of those who travel the public highways. (*Id.* at pp. 78-79.)

## Discussion

The trial court denied the preliminary injunction on the basis that appellants were not likely to prove the helmet law unconstitutional at trial. It discussed its reasons at considerable length. It correctly observed it is the court's function not to decide whether a law is effective, but only to ascertain whether the Legislature acted within the proper course and scope of its constitutional powers when it enacted the law. It added: "Albeit that there may be times when it might be wiser to pursue other avenues to accomplish a particular goal, you have to look at the statute and the purpose, and if there's a reasonable relationship between the two, then the statute does not violate due process." The court found the State of California has a legitimate interest in highway safety and there is no fundamental right to operate a motor vehicle; rather, driving is a privilege, "subject to extensive legislative regulations." It further found section 27803 was enacted pursuant to the police powers of the state, with the goal of preventing injuries to motorcyclists and their passengers, and the statute is rationally related to that goal. It then analyzed and rejected each of the remaining challenges asserted by appellants, finding the law does not unlawfully discriminate against the handicapped, or impermissibly infringe on the appellants' rights to privacy, freedom of religion or freedom of expression. The trial court ran a true course and reached the only right result. We affirm.

## I

### THE HELMET LAW IS RATIONALLY RELATED TO A LEGITIMATE STATE CONCERN

Appellants' first challenge is that the law violates their right to due process because it is not rationally related to the object the Legislature expressly sought to achieve, i.e., "additional safety benefits" for those who ride motorcycles. (§ 27803, subd. (f).) The underlying predicate to appellants' argument is that because they presented *evidence* the helmet law does *not* accomplish its intended safety purpose, the state had to come forward with controverting evidence *justifying* the propriety of the Legislature's choice. That predicate is absolutely wrong.

In *Paris Adult Theatre I* v. *Slaton* (1973) 413 U.S. 49 [37 L.Ed.2d 446, 93 S.Ct. 2628], an obscenity case, the United States Supreme Court rejected petitioners' assertion that state regulation must be validated by concrete data if it is to pass constitutional muster. It stated: " 'We do not demand of legislatures "scientifically certain criteria of legislation." [Citation.]' Although there is no conclusive proof of a connection between antisocial behavior and obscene material, the legislature of Georgia could quite reasonably determine that such a connection *does* or *might* exist. . . . [¶] From the beginning of civilized societies, legislators and judges have acted on various unprovable assumptions. Such assumptions underlie much lawful state regulation of commercial and business affairs. . . . The same is true of the federal securities and antitrust laws and a host of federal regulations. . . . [¶] Likewise, when legislatures and administrators act to protect the physical environment from pollution and to preserve our resources of forests, streams, and parks, they must act on such imponderables as the impact of a new highway near or through an existing park or wilderness area. . . . *The fact that a congressional directive reflects unprovable assumptions about what is good for the people . . . is not a sufficient reason to find that statute unconstitutional.*" (*Paris Adult Theatre I* v. *Slaton, supra,* 413 U.S. 49, 60-62 [37 L.Ed.2d 446, 458-460], italics added.)

Continuing, the court noted: "Nothing in the Constitution prohibits a State from reaching . . . [a conclusion] and acting on it legislatively simply because there is *no conclusive evidence or empirical data.* [¶] . . . We do indeed base our society on certain assumptions that people have the capacity for free choice. Most exercises of individual free choice—those in politics, religion, and expression of ideas—are explicitly protected by the Constitution. Totally unlimited play for free will, however, is not allowed in our or any other society. . . . [Blue sky securities laws, for instance,] are to protect the weak, the uninformed, the unsuspecting, and the gullible from the exercise of their own volition. Nor do modern societies leave disposal of garbage and sewage up to the individual 'free will,' but impose regulation to protect both public health and the appearance of public places. . . . [¶] 'We do not sit as a super-legislature to determine the wisdom, need, and propriety of laws that touch economic problems, business affairs, or social conditions.' " (*Paris Adult Theatre I* v. *Slaton, supra,* (1973) 413 U.S. at pp. 63-64 [37 L.Ed.2d at pp. 460-461].)

Clearly, even if we agreed with appellants that the helmet law is unwise, we do not have the power to relieve them of their obligations to comply with it. It matters not that they presented evidence that (1) helmets do not always make all motorcyclists safer, (2) helmets may actually create additional hazards to riders in some situations, (3) there are other less intrusive, far

more effective ways to make motorcycling safe, and (4) the evidence the Legislature considered was not as "good" as appellants' evidence.[4] ██
Assuming *all* of that to be true, we *still* would not be authorized to find the law unconstitutional: It is not the function of the courts to decide whether the Legislature properly weighed the evidence offered by proponents and opponents of a law, or whether it selected the "correct" remedy for a given problem. "The wisdom of the legislation is not at issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute." (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].)[5]

██ The "wisdom" of legislation is a matter of public policy. The Legislature, not the judiciary, is the custodian of public policy. Even if, as appellants claim, the helmet law is more poison than panacea, it constitutes a proper exercise of the police powers of the state, and it is rationally related to the Legislature's express purpose of ensuring the safety and welfare of persons traveling on public highways.

II

### THE HELMET LAW IS NOT IMPERMISSIBLY VAGUE

Section 27802 authorizes the DMV to set out reasonable specifications and standards for motorcycle helmets as it deems necessary for the safety of motorcyclists and their passengers. The regulations "shall include, but are not limited to, the requirements imposed by Federal Motor Vehicle Safety Standard No. 218 (49 C.F.R. Sec. 571.218) . . . ." (§ 27802, subd. (a).)[6] Helmets must be conspicuously labeled to show the manufacturer's certification of compliance with applicable federal standards. (*Ibid.*) Subdivision (b) of the statute prohibits anyone from selling or offering for sale a motorcycle helmet not complying with DMV-established standards.

---

[4]At oral argument, appellants' counsel acknowledged the Legislature had conducted hearings prior to enacting the helmet law, but contended the materials presented were merely "anecdotal," rather than evidentiary. According to counsel, the Legislature heard the emotional narrations of overwrought parents whose helmetless sons and daughters had suffered injuries or death in motorcycle accidents.

[5]Moreover, to the extent appellants seek review under a heightened judicial scrutiny standard, we note there is no fundamental right to drive a motor vehicle. (*Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d 70, 80-81, 83; *Anacker* v. *Sillas* (1976) 65 Cal.App.3d 416, 423 [135 Cal.Rptr. 537].)

[6]49 Code of Federal Regulations section 571.218 (1992) covers about eight pages of text setting forth the "minimum performance requirements" for the design, manufacture and distribution of "helmets designed for use by motorcyclists and other motor vehicle users," for the purpose of "reduc[ing] deaths and injuries . . . resulting from head impacts." (49 C.F.R. § 571.218(1) & (2).) Inter alia, it defines words and phrases used and lays down requirements of impact attenuation, penetration, retention, configuration, testing and labeling.

As noted, the legislative purpose underlying section 27803 is to provide "an additional safety benefit" to motorcyclists and their passengers. (§ 27803, subd. (f).) The statute requires motorcyclists and their passengers, when riding on the highways, to wear helmets complying with section 27802, and makes it unlawful for them to fail to do so. (§ 27803, subds. (a), (b), (c) and (d).) It defines " 'wearing a safety helmet' " as "having a safety helmet meeting the requirements of Section 27802 on the person's head . . . fastened with the helmet straps and . . . of a size that fits the wearing person's head securely without excessive lateral or vertical movement." (§ 27803, subd. (e).)

 Appellants contend the helmet law is void for vagueness under the federal and state Constitutions in that it "prescribes a standard which cannot be understood by persons of ordinary intelligence." They assert neither motorcyclists nor police officers can tell whether a particular helmet complies.

Their first claim in this respect is the law is *too specific*: The incorporated federal safety standards are so technical one must be a physicist or an engineer testing the product in a laboratory to ascertain whether a particular helmet complies. But underlying this argument is the proposition that the statute requires the *consumer* or *enforcement officer* to decide if the helmet is properly fabricated, and such a reading of section 27803 is absurd. When sections 27802 and 27803 are harmonized, as they must be (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]), it is clear the law requires only that the consumer wear a helmet bearing a *certification* of compliance.

Appellants next claim the law is *too general*, i.e., it requires a motorcyclist to wear a helmet which fits the head "without excessive lateral or vertical movement." According to appellants, they must guess whether the helmet fits, and then a police officer, also guessing, may disagree and issue a citation. But the description "excessive lateral or vertical movement" is not so amorphous as to defy intelligent analysis. As noted in *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662 [114 Cal.Rptr. 345, 522 P.2d 1345], "the terms 'substantial conflict' and 'material economic effect' are relative terms subject to some intepretation [*sic*], and . . . reasonable [persons] may differ with respect to the meaning of those terms." (*Id.* at p. 672.) Yet the Legislature's use of subjective terms does not mean a statute is impermissibly vague; statutes "must be given a reasonable and practical construction in accordance with the probable intent of the Legislature. [Citations.] ' " 'Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its

language.' . . . It will be upheld if its terms may be made reasonably certain by reference to other definable sources." ' [Citation.]" (*Id.* at p. 673.)

■ Here, day-to-day experience teaches a purchaser or wearer of apparel to discern the fit—tight or loose, big or small. And we have little doubt observers can detect misfits to some degree. ■ Thus, it matters not that someone may, at some time, guess wrong about the size of the helmet: " 'The law is replete with instances in which a person must, at his [or her] peril, govern his [or her] conduct by such nonmathematical standards as "reasonable," "prudent," "necessary and proper," "*substantial*," and the like. Indeed, a wide spectrum of human activities is regulated by such terms. . . . Yet standards of this kind are not impermissively [*sic*] vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind.' " (*County of Nevada* v. *MacMillen* , *supra*, 11 Cal.3d 662, 673.)

## III

### THE HELMET LAW DOES NOT VIOLATE THE AMERICANS WITH DISABILITIES ACT OR THE UNRUH CIVIL RIGHTS ACT

■ Appellants contend section 27803 violates the Americans with Disabilities Act (42 U.S.C. §§ 12132-12213, hereafter ADA) and the Unruh Civil Rights Act, Civil Code section 51 (Unruh Act). They argue Bowman cannot ride his motorcycle while wearing a helmet because his hearing aid—which he needs to hear the sounds of traffic—produces feedback. Appellants claim the law is invalid because of the undue burden it places on Bowman. They are wrong, and the point merits little discussion.

In the first place, we do not read either the ADA or the Unruh Act to address the issue of the right of a disabled person to operate a motor vehicle or motorcycle. The ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132.) It mandates the handicapped have access to public transportation, buildings, facilities and communications, but it contains no reference to operation of motor vehicles or to the federal safety standards regarding helmets. As for the Unruh Act, it gives physically handicapped persons the right to full and equal accommodations and services in business establishments. (Civ. Code,

§ 51.) ▬ ■ Appellants do not attempt to explain how it applies here, and in light of its history and express language, it clearly does *not*.[7]

 Moreover, even assuming Bowman must give up riding his motorcycle while those with unimpaired hearing continue to ride, that would not constitute grounds for declaring the helmet law unconstitutional. As the court in *Anacker v. Sillas, supra,* 65 Cal.App.3d 416, 424, aptly observed in regard to the Financial Responsibility Law (§ 16000 et seq): " '[U]nfair' is not 'unconstitutional.' While one might propose other, perhaps better ways [to achieve the purpose of the legislation] this is not to say that the method adopted by the Legislature is irrational. Weighing of the benefits and burdens of alternative plans is a peculiarly legislative task." (Fn. omitted.)

It is irrelevant that a law has a substantially different impact on some persons than on others "[s]o long as the legislatively mandated system meets minimum procedural due process standards." (*King v. Meese, supra,* 43 Cal.3d 1217, 1235.) The Legislature could have narrowed the category of persons required to wear helmets while operating a motorcycle or riding as a passenger. It could have created exemptions for the disabled—and it still can. But "we cannot look behind the enacted framework to replace the Legislature's social judgment with our own. To do so would be an egregious violation of the separation of powers." (*Ibid.*)

IV

THE HELMET LAW DOES NOT IMPERMISSIBLY INFRINGE ON FREEDOM OF RELIGION, FREEDOM OF EXPRESSION OR THE RIGHT OF PRIVACY

The preceding discussion applies equally to appellants' contentions the helmet law restricts their freedom of religion, freedom of expression and right of privacy.

 As for freedom of religion, appellants concede Khalsa, a Sikh, is not being forced to cease practicing his religion. However, they argue, the law "penalizes" Khalsa by denying him "one of the most practical, economical and efficient methods of transportation available." But an otherwise valid and neutral law is not rendered unconstitutional just because it incidentally

---

[7]See, e.g., *Marina Point Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 731 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]: "Emanating from and modeled upon traditional 'public accommodations' legislation, the Unruh Act expanded the reach of such statutes from common carriers and places of public accommodation and recreation, e.g., railroads, hotels, restaurants, theaters and the like, to include 'all business establishments of every kind whatsoever.' " See also *Curran v. Mount Diablo Council of the Boy Scouts* (1983) 147 Cal.App.3d 712, 733 [195 Cal.Rptr. 325, 38 A.L.R.4th 607]: "The primary purpose of the Unruh Act is to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the act."

impacts a person's religious practices. (See *Employment Div., Ore. Dept. of Human Res.* v. *Smith* (1990) 494 U.S. 872, 885 [108 L.Ed.2d 876, 889-890, 110 S.Ct. 1595], considering a law prohibiting the use of peyote: "The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, 'cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development.'") Here, of course, the law does not prohibit Khalsa from practicing his religion, i.e., wearing a Rishi knot and turban in public. Rather, it prohibits him from riding a motorcycle on public highways without a helmet.[8]

With regard to the right of privacy, under either California's Constitution or the First Amendment, appellants direct us to no analogous authority—nor have we found any—suggesting there is a right of privacy to ride helmetless on a public highway. Indeed, the Wisconsin Supreme Court appears to have hit the nail on the head in noting: "There is no place any such right to be let alone would be less assertable than on a modern highway with cars, trucks, buses and cycles whizzing by at sixty or seventy miles an hour." (*Bisenius* v. *Karns* (1969) 42 Wis.2d 42 [165 N.W.2d 377, 384].)[9]

The United States Supreme Court has said the right to privacy includes "'only personal rights that can be deemed "'fundamental'" or 'implicit in the concept of ordered liberty.' [Citations.]" (*Paris Adult Theatre I* v. *Slaton, supra,* 413 U.S. 49, 65 [37 L.Ed.2d 446, 462].) Such personal rights extend to "the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." (*Ibid.*) But it would be a stretch indeed to

---

[8]Appellants argue "the appropriate standard for determining the constitutionality of § 27803 remains the one set forth in *Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790]," i.e., whether a compelling state interest justifies a substantial burden placed on a person's practice observing a central religious belief. But the United States Supreme Court has rejected the notion that the *Sherbert* test applies to situations such as the one presented here (*Employment Div., Ore. Dept. of Human Res.* v. *Smith, supra,* 494 U.S. 872, 882-889 [108 L.Ed.2d 876, 887-892]), noting "The rule respondents favor would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind . . . ." (*Id.* at p. 888 [108 L.Ed.2d at p. 892].) The court concluded, "The First Amendment's protection of religious liberty does not require this." (*Id.* at p. 889 [108 L.Ed.2d at p. 892], fn. omitted.)

[9]See also *Picou* v. *Gillum* (11th Cir. 1989) 874 F.2d 1519. There, the federal court of appeals rejected arguments that Florida's helmet law violated the appellant's constitutional right to privacy, to be free from paternalistic laws and to be "let alone"—e.g., his due process right to be protected against state intrusion on intimate and fundamental personal decisions. (*Picou* v. *Gillum, supra,* 874 F.2d 1519, 1520.) Noting the right involved was not analogous to reproductive choice or parenting and family decisions, the court stated: "There is little that could be termed private in the decision whether to wear safety equipment on the open road. Indeed the Supreme Court has repeatedly declined to recognize a constitutional right that would cover appellant's case." (*Id.* at p. 1521, fn. omitted.)

find the right to ride helmetless on a public highway comparable to the enumerated personal rights or implicit in the concept of ordered liberty.[10]

██ Appellants' freedom of speech or freedom of expression of individuality argument fares no better. In this respect, we wholeheartedly agree with the Supreme Court of Maine: "The essence of the activity of operating a motorcycle is not 'speech'. If it happens to be utilized to express an idea, such fortuitous 'speech' overlay does not deny to the State the right to exercise its police power reasonably to regulate the predominant 'non-speech' facets of the conduct of operating a motorcycle. . . . Thus, notwithstanding that the operation of a motorcycle may be the means of making a communicative statement, there is no violation of the constitutional guarantee of freedom of speech when, as here, the predominantly 'non-speech' facets of the activity are subjected to regulations reasonably calculated to promote the safety of the public's use of the highways." (*State* v. *Quinnam* (Me. 1977) 367 A.2d 1032, 1033-1034.)[11]

## Conclusion

While this is a case of first impression in California, we are not without guidance in concluding the helmet law is a permissible exercise of legislative power. ██ As stated by the Supreme Court more than 50 years ago:

---

[10]Other statutes relating to highway safety have withstood right-of-privacy challenges. In *People* v. *Thomas* (1984) 159 Cal.App.3d Supp. 18 [206 Cal.Rptr. 84], the appellant claimed section 27360, subdivision (a)—the child restraint law—was an " 'unconstitutional interference with the fundamental right of family privacy and parental autonomy.' " (159 Cal.App.3d at pp. Supp. 20-21.) The court observed that while the seat restraint law related to the " 'care' " of the children in ensuring their safe transportation, it did not intrude on the "type of 'care' encompassed by the fundamental right to family privacy, as this regulation does not affect the *integrity* of defendant's family unit." (*Id.* at p. Supp. 22.) It further noted appellant had no "legitimate expectation of family privacy" in making the decision "whether to provide safe transportation for her children." (*Ibid.*)

See also *People* v. *Coyle* (1988) 204 Cal.App.3d Supp. 1 [251 Cal.Rptr. 80], where appellant argued the mandatory seat belt law unconstitutionally infringed on his right to privacy. The court, upholding the law, remarked: "[T]he United States Supreme Court has rejected the concept that the individual is not accountable to society for his [or her] actions insofar as those acts affect no person other than himself [or herself]. [Citation.]" (*Id.* at p. Supp. 4.)

In its briefs and at oral argument, appellants attempted to distinguish the helmet law from the seat belt law by pointing out that a motorcycle rider must spend a great deal of money on a helmet and then suffer the inconvenience of carrying it about when not riding. The seat belt law might well be less burdensome, but so what? The child restraint law is probably *more* burdensome: Caretakers are compelled either to purchase multiple infant or child restraint seats or to move a single seat from car to car. We reiterate: It is not our role to arbitrate such matters.

[11]Appellants attempt to distinguish *Quinnam* because "[e]xpression is not a mere byproduct" of their conduct, "but the *motivation* for that conduct." It would be ludicrous to apply the distinction: The effect would be " 'to permit every citizen to become a law unto himself [or herself].' " (*Employment Div., Ore. Dept. of Human Res.* v. *Smith, supra,* 494 U.S. 872, 879 [108 L.Ed.2d 876, 886].)

"The legislative power to regulate travel over the highways and thoroughfares of the state for the general welfare is extensive. It may be exercised in any reasonable manner to conserve the safety of travelers and pedestrians. Since motor vehicles are instruments of potential danger, their registration and the licensing of their operators have been required almost from their first appearance. The right to operate them in public places is not a natural and unrestrained right, but a privilege subject to reasonable regulation, under the police power, in the interest of the public safety and welfare." (*Watson* v. *Division of Motor Vehicles* (1931) 212 Cal. 279, 283 [298 P. 481].) More recently, the Supreme Court noted "the reasonableness and necessity of regulation" of public highways is "apparent." (*Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d 70, 79.)

We do not stand alone or act in a vacuum. The courts of other jurisdictions have upheld mandatory motorcycle helmet laws against numerous constitutional challenges, rejecting all of the arguments raised by appellants here.[12] We discern the existence of a nationwide concern, obviously shared by the Legislature of the State of California, for the safety and

---

[12]See *Picou* v. *Gillum, supra,* 874 F.2d 1519; *Simon* v. *Sargent* (D.Mass. 1972) 346 F.Supp. 277; *Kingery* v. *Chapple* (Alaska 1972) 504 P.2d 831; *State* v. *Beeman* (1975) 25 Ariz.App. 83 [541 P.2d 409]; *Penney* v. *City of North Little Rock* (1970) 248 Ark. 1158 [455 S.W.2d 132]; *Love* v. *Bell* (1970) 171 Colo. 27 [465 P.2d 118]; *State* v. *Brady* (Del. 1972) 290 A.2d 322; *Hamm* v. *State* (Fla. 1980) 387 So.2d 946; *State* v. *Cotton* (1973) 55 Hawaii 138 [516 P.2d 709]; *State* v. *Albertson* (1970) 93 Idaho 640 [470 P.2d 300]; *City of Wichita* v. *White* (1970) 205 Kan. 408 [469 P.2d 287]; *Commonwealth* v. *Coffman* (Ky. 1970) 453 S.W.2d 759; *Everhardt* v. *City of New Orleans* (1968) 253 La. 285 [217 So.2d 400]; *State* v. *Quinnam, supra,* 367 A.2d 1032; *Commonwealth* v. *Guest* (1981) 12 Mass.App. 941 [425 N.E.2d 779]; *State* v. *Edwards* (1970) 287 Minn. 83 [177 N.W.2d 40]; *People* v. *Poucher* (1976) 398 Mich. 316 [247 N.W.2d 798]; *Jackson* v. *Lee* (Miss. 1971) 252 So.2d 897; *State* v. *Cushman* (Mo. 1970) 451 S.W.2d 17; *Robotham* v. *State* (1992) 241 Neb. 379 [488 N.W.2d 533]; *State* v. *Eighth Judicial District Court* (1985) 101 Nev. 658 [708 P.2d 1022]; *State* v. *Merski* (1973) 113 N.H. 323 [307 A.2d 825]; *City of Albuquerque* v. *Jones* (1975) 87 N.M. 486 [535 P.2d 1337]; *People* v. *Bielmeyer* (1967) 54 Misc.2d 466 [282 N.Y.S.2d 797]; *People* v. *Bennett* (1977) 89 Misc.2d 382 [391 N.Y.S.2d 506]; *State* v. *Anderson* (1969) 275 N.C. 168 [166 S.E.2d 49]; *State* v. *Stouffer* (1971) 28 Ohio App.2d 229 [276 N.E.2d 651]; *State* v. *Fetterly* (1969) 254 Ore. 47 [456 P.2d 996]; *Commonwealth* v. *Kautz* 341 Pa.Super. 374 [491 A.2d 864]; *State* v. *Lombardi* (1972) 110 R.I. 776 [298 A.2d 141]; *Arutanoff* v. *Metropolitan Government of Nashville & Davidson County* (1969) 223 Tenn. 535 [448 S.W.2d 408]; *State* v. *Acker* (1971) 26 Utah 2d 104 [485 P.2d 1038]; *State* v. *Solomon* (1969) 128 Vt. 197 [260 A.2d 377]; *State* v. *Zektzer* (1975) 13 Wn.App. 24 [533 P.2d 399]; *Bisenius* v. *Karns* (1969) 42 Wis.2d 42 [165 N.W.2d 377]; and *City of Kenosha* v. *Dosemagen* (1972) 54 Wis.2d 269 [195 N.W.2d 462].

Further, the United States Supreme Court has summarily considered mandatory helmet law cases involving the same constitutional challenges as those raised here and affirmed or dismissed for lack of a substantial federal question. (*Simon* v. *Sargent, supra,* 346 F.Supp. 277, affd. 409 U.S. 1020 [34 L.Ed.2d 212, 93 S.Ct. 460]; *Bisenius* v. *Karns, supra,* 165 N.W.2d 377, app. dism. 395 U.S. 709 [23 L.Ed.2d 655, 89 S.Ct. 2033]; and *Everhardt* v. *City of New Orleans, supra,* 217 So.2d 400, app. dism. 395 U.S. 212 [23 L.Ed.2d 214, 89 S.Ct. 1775].) Unlike denial of certiorari, the Supreme Court's summary dispositions are

welfare of motorcyclists and their passengers. The laws enacted out of that solicitous concern may be deemed by some, like appellants here, to be inappropriately intrusive—nothing more than the rules of an overly protective surrogate parent seeking to shield grown men and women from the untoward consequences of their own foolhardy behavior. But even if that were so, there is a broader, secondary societal interest served by the helmet laws: They also protect the sensibilities and economic interests of the public at large. Appellants may not care if they die in an accident, but other users of the public highways would clearly prefer not to kill them. As aptly noted in *Picou* v. *Gillum, supra,* 874 F.2d 1519, 1522: " '[In] a society unwilling to abandon bleeding bodies on the highway, the motorcyclist or driver who endangers himself [or herself] plainly imposes costs on others.' "

Appellants failed to demonstrate the likelihood they would prevail in their action. We note the potential hardships alleged by appellants are minimal and, in some instances, purely speculative. But we need not engage in an analysis of the balance-of-hardships issue. Where, as here, there is *no* likelihood of success on the merits, an injunction should not issue, even to prevent irreparable harm: " 'Where there is indeed no likelihood that the plaintiff will prevail, an injunction favoring the plaintiff serves no valid purpose and can only *cause* needless harm.' [Citation.]" (*Scates* v. *Rydingsword* (1991) 229 Cal.App.3d 1085, 1096 [280 Cal,.Rptr. 544].) In light of the opinions expressed in this decision, we find it extremely difficult to conceive any basis on which appellants might hope to prevail in their action for a permanent injunction.

The order denying appellants' request for a preliminary injunction is affirmed. Appellants shall bear the costs of appeal.

Sills, P. J., and Moore, J., concurred.

A petition for a rehearing was denied July 22, 1993.

---

entitled to full precedential respect. (*Hicks* v. *Miranda* (1975) 422 U.S. 332, 344-345 [45 L.Ed.2d 223, 236-237, 95 S.Ct. 2281].)