TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 98-1003 |
| of | : | December 29, 1998 |
| DANIEL E. LUNGREN<br>Attorney General | : | |
| ANTHONY M. SUMMERS<br>Deputy Attorney General | : | |

THE HONORABLE ABEL MALDONADO, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

Is a person whose employment requires that he operate a motorcycle and whose medical condition makes the wearing of a safety helmet a physical and functional hazard exempt from wearing a safety helmet while operating a motorcycle for work-related purposes?

CONCLUSION

A person whose employment requires that he operate a motorcycle and whose medical condition makes the wearing of a safety helmet a physical and functional hazard is not exempt from wearing a safety helmet while operating a motorcycle for work-related purposes.

ANALYSIS

In 1984, the Legislature adopted a mandatory motorcycle helmet law. (Stats. 1984, ch. 987, § 1.) Vehicle Code section 27803[1] provides in part:

"(a) A driver and any passenger shall wear a safety helmet meeting requirements established pursuant to Section 27802 when riding on a motorcycle, motor-driven cycle, or motorized bicycle.

"(b) It is unlawful to operate a motorcycle, motor-driven cycle, or motorized bicycle if the driver or any passenger is not wearing a safety helmet as required by subdivision (a).

"(c) It is unlawful to ride as a passenger on a motorcycle, motor-driven cycles, or motorized bicycle if the driver or any passenger is not wearing a safety helmet as required by subdivision (a).

"(d) This section applies to persons who are riding on motorcycles, motor-driven cycles, or motorized bicycles operated on the highways.

"(e) For the purposes of this section, 'wear a safety helmet' or 'wearing a safety helmet' means having a safety helmet meeting the requirements of Section 27802 on the person's head that is fastened with the helmet straps and that is of a size that fits the wearing person's head securely without excessive lateral or vertical movement."

We are asked whether an exemption from this law is available for a person operating a motorcycle for work-related purposes, where the person is employed in the motorcycle industry and is required as part of his employment duties to operate a motorcycle on the highway, but he suffers from a medical condition that makes the wearing of a safety helmet a physical and functional hazard. We conclude that no exemption exists for the person under these circumstances.

The constitutionality of the mandatory motorcycle helmet law was upheld in *Buhl* v. *Hannigan* (1993) 16 Cal.App.4th 1612. In responding to a claim that the law impermissibly discriminated against disabled persons, the court stated:

"Appellants contend section 27803 violates the Americans with

---

[1] References to the Vehicle Code hereafter are by section number only.

Disabilities Act (42 U.S.C. §§ 12132-12213, hereafter ADA) and the Unruh Civil Rights Act, Civil Code section 51 (Unruh Act). They argue Bowman cannot ride his motorcycle while wearing a helmet because his hearing aid–which he needs to hear the sounds of traffic–produces feedback. Appellants claim the law is invalid because of the undue burden it places on Bowman. They are wrong, and the point merits little discussion.

"In the first place, we do not read either the ADA or the Unruh Act to address the issue of the right of a disabled person to operate a motor vehicle or motorcycle. The ADA provides 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' (42 U.S.C. § 12132.) It mandates the handicapped have access to public transportation, buildings, facilities and communications, but it contains no reference to operation of motor vehicles or to the federal safety standards regarding helmets. As for the Unruh Act, it gives physically handicapped persons the right to full and equal accommodations and services in business establishments. (Civ. Code, § 51.) Appellants do not attempt to explain how it applies here, and in light of its history and express language, it clearly does *not*.

"Moreover, even assuming Bowman must give up riding his motorcycle while those with unimpaired hearing continue to ride, that would not constitute grounds for declaring the helmet law unconstitutional. As the court in *Anacker* v. *Sillas*, *supra*, 65 Cal.App.3d 416, 424, aptly observed in regard to the Financial Responsibility Law (§ 16000 et seq): '"[U]nfair" is not "unconstitutional." While one might propose other, perhaps better ways [to achieve the purpose of the legislation] this is not to say that the method adopted by the Legislature is irrational. Weighing of the benefits and burdens of alternative plans is a peculiarly legislative task.' (Fn. omitted.)

"It is irrelevant that a law has a substantially different impact on some persons than on others '[s]o long as the legislatively mandated system meets minimum procedural due process standards.' [Citation.] The Legislature could have narrowed the category of persons required to wear helmets while operating a motorcycle or riding as a passenger. It could have created exemptions for the disabled–and it still can. But 'we cannot look behind the enacted framework to replace the Legislature's social judgment with our own. To do so would be an egregious violation of the separation of powers.' " (*Id.*, at pp. 1623-1624, fn. omitted.)

The fact that someone may be required to use a motorcycle in his employment, not merely to go to and from a place of employment, would not cause us to reach a different conclusion from that expressed in *Buhl*. We note that courts have examined the validity of laws regulating the use of vehicles on the public highways under a "rational basis" test, declaring that there is no "fundamental right" to drive a motor vehicle. (See, e.g., *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70 [suspension of license for refusal to submit to chemical test following arrest for drunk driving]; *Buhl* v. *Hannigan, supra,* 16 Cal.App.4th at 1621, fn. 5.) The courts have upheld legislative enactments having a greater impact upon those required to use vehicles in their employment than upon the general public. (See, e.g., *Escobedo* v. *State Department of Motor Vehicles* (1950) 35 Cal.2d 870 [financial responsibility laws upheld; plaintiff was a gardener, required to use his automobile in his work to earn a livelihood for himself, his dependent wife, and 9 children]; *Alderette* v. *Department of Motor Vehicles* (1982) 135 Cal.App.3d 174 [equal protection not denied by statute requiring revocation of farm labor driver certificate upon conviction of driving under the influence, despite fact that certificate was a requisite of employment]; *Murphy* v. *Department of Motor Vehicles* (1978) 86 Cal.App.3d 119 [mandatory suspension provision of implied consent law not violative of equal protection despite the fact that some are deprived of employment while others are deprived only of pleasure driving]; *Pepin* v. *Department of Motor Vehicles* (1969) 275 Cal.App.2d 9 [no violation of equal protection where Legislature does not provide exception from mandatory suspension law for "employment-livelihood" cases].)

Significantly, *Buhl* v. *Hannigan*, *supra*, 16 Cal.App.4th 1612, upheld the motorcycle helmet law against a claim that it infringed upon a defendant's freedom of religion, a "fundamental constitutional right." The court's response to the assertion that the defendant could not wear a turban, required by his religion, while wearing a helmet was as follows:

> "As for freedom of religion, appellants concede Khalsa, a Sikh, is not being forced to cease practicing his religion. However, they argue, the law 'penalizes' Khalsa by denying him 'one of the most practical, economical and efficient methods of transportation available.' But an otherwise valid and neutral law is not rendered unconstitutional just because it incidentally impacts a person's religious practices. (See *Employment Div., Ore. Dept. of Human Res*. v. *Smith* (1990) 494 U.S. 872, 885 [108 L.Ed.2d 876, 889-890, 110 S.Ct. 1595], considering a law prohibiting the use of peyote: 'The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, "cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." ') Here, of course, the law does not prohibit Khalsa from practicing his religion, i.e., wearing a Rishi knot and turban in

public. Rather, it prohibits him from riding a motorcycle on public highways without a helmet." (*Buhl* v. *Hannigan, supra,* 16 Cal.App.4th at 1624-1625, fn. omitted.)

Hence, even if a "fundamental constitutional right" were asserted here, *Buhl* upheld the mandatory helmet law against such an argument.

Finally, *Buhl* recognized that the mandatory motorcycle helmet requirement serves a legitimate public interest, since a motorcyclist who injures himself imposes various costs on society. (*Buhl* v. *Hannigan*, *supra*, 16 Cal.App.4th at 1628.) A comprehensive analysis of this rationale was provided by the court in *State* v. *Beeman* (1975) 25 Ariz.App. 83, 84-85 [541 P.2d 409, 410-411] as follows:

"The defendant's position . . . is . . . that the state's police power does not extend to overcoming the right of the individual to incur risks that involve only himself. In dealing with this argument the District Court observed:

" 'In view of the evidence warranting a finding that motorcyclists are especially prone to serious head injuries, . . the public has an interest in minimizing the resources directly involved. From the moment of the injury, society picks the person up off the highway; delivers him to a municipal hospital and municipal doctors; provides him with unemployment compensation if, after recovery, he cannot replace his lost job, and, if the injury causes permanent disability, may assume the responsibility for his and his family's continued subsistence. We do not understand a state of mind that permits plaintiff to think that only he himself is concerned.'

"We agree with this observation. Any accident on the public highway puts into motion the wheels of a number of different state and local agencies at a substantial cost to the taxpayers. Furthermore, the helmet prevents a motorcyclist from being injured or his attention diverted, by stones or debris thrown up from the roadside, thereby causing the cyclist to lose control and threaten the safety of both motorists and pedestrians in close proximity. In light of these facts we feel that there is valid state interest in requiring all motorcyclists to wear helmets and, therefore, [the Arizona mandatory helmet requirement] is a valid constitutional extension of the state's police power."

Accordingly, we conclude that the mandatory motorcycle helmet law is a valid exercise of the police power and that a person whose employment requires the use of a motorcycle is not, by reason of that fact, exempt from its requirements even though he has a physical disability which precludes the wearing of a helmet.

* * * * *

98-1003

* * * * *