[No. D019372. Fourth Dist., Div. One. May 3, 1994.]

STEVEN W. BIANCO, Plaintiff and Appellant, v.
CALIFORNIA HIGHWAY PATROL, Defendant and Respondent.

**COUNSEL**

Steven W. Bianco, in pro. per., for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Martin H. Milas and Jack T. Kerry, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**TODD, J.**—Steven W. Bianco, in propria persona, appeals from the denial of his second amended petition for writ of mandate in which he challenged (1) generally, the authority of the California Highway Patrol (CHP) to determine which motorcycle helmets are approved and unapproved under the state's mandatory helmet law (Veh. Code,[1] §§ 27802 and 27803) and (2) specifically, a bulletin issued by the CHP that stated the "beanie" helmet manufactured by E & R Fiberglass, Inc., of Tacoma, Washington, (E & R Fiberglass), failed to meet minimum standards as required by section 27802. Bianco contends the trial court made numerous errors in its findings of facts and there was no basis for denying his cross-complaint for injunctive and declaratory relief.

### FACTS

California's mandatory motorcycle helmet law (§§ 27802 and 27803) went into effect on January 1, 1992. Section 27803, as amended in 1991, provides:

"(a) A driver and any passenger shall wear a safety helmet meeting requirements established pursuant to Section 27802 when riding on a motorcycle, motor-driven cycle, or motorized bicycle.

"(b) It is unlawful to operate a motorcycle, motor-driven cycle, or motorized bicycle if the driver or any passenger is not wearing a safety helmet as required by subdivision (a).

"(c) It is unlawful to ride as a passenger on a motorcycle, motor-driven cycles, or motorized bicycle if the driver or any passenger is not wearing a safety helmet as required by subdivision (a).

"(d) This section applies to persons who are riding on motorcycles, motor-driven cycles, or motorized bicycles operated on the highways.

"(e) For the purposes of this section, 'wear a safety helmet' or 'wearing a safety helmet' means having a safety helmet meeting the requirements of Section 27802 on the person's head that is fastened with the helmet straps

---

[1]All statutory references are to the Vehicle Code unless otherwise specified.

and that is of a size that fits the wearing person's head securely without excessive lateral or vertical movement.

"(f) In enacting this section, it is the intent of the Legislature to ensure that all persons are provided with an additional safety benefit while operating or riding a motorcycle, motor-driven cycle, or motorized bicycle." (Stats. 1991, ch. 32, § 1.)

Section 27802 provides:

"(a) The department may adopt reasonable regulations establishing specifications and standards for safety helmets offered for sale, or sold, for use by drivers and passengers of motorcycles and motorized bicycles as it determines necessary for the safety of those drivers and passengers. The regulations shall include, but are not limited to, the requirements imposed by Federal Motor Vehicle Safety Standard No. 218 (49 C.F.R. Sec. 571.218) and may include compliance with that federal standard by incorporation of its requirements by reference. Each helmet sold or offered for sale for use by drivers and passengers of motorcycles and motorized bicycles shall be conspicuously labeled in accordance with the federal standard which shall constitute the manufacturer's certification that the helmet conforms to the applicable federal motor vehicle safety standards.

"(b) No person shall sell, or offer for sale, for use by a driver or passenger of a motorcycle or motorized bicycle any safety helmet which is not of a type meeting requirements established by the department."

"Department," as used in section 27802, refers to the Department of the California Highway Patrol. (§§ 290, 24000.)

In his verified second amended petition for writ of mandate, Bianco alleges that he purchased a helmet manufactured by E & R Fiberglass with the intent to comply with the helmet law. The helmet bore a United States Department of Transportation (DOT) self-certification sticker applied by the manufacturer.

In April 1992, at the direction of the National Highway Traffic Safety Administration (NHTSA),[2] two independent testing laboratories prepared reports on whether the E & R Fiberglass's beanie motorcycle helmet met the Federal Motor Vehicle Safety Standard No. 218 (FMVSS 218). Each of the laboratory reports showed the helmet failed to meet the requirements of FMVSS 218. The NHTSA sent copies of the test reports to the CHP.

---

[2]NHTSA is an agency of the DOT.

On June 1, 1992, the CHP issued an information bulletin (Bulletin No. 34) that read as follows:

"The California Highway Patrol (CHP) is disseminating this information to California law enforcement agencies because of the wide spread use of an unapproved motorcycle helmet.

"The CHP received several inquiries regarding a 'Beanie' helmet manufactured by E & R Fiberglass of Tacoma, Washington. Although the manufacturer was selling the helmet as U.S. Department of Transportation (DOT) approved, there was a concern that the helmet did not actually meet the minimum DOT standards (FMVSS 218). As a result, the DOT was requested to test the helmet to verify compliance with the standards.

"The DOT has completed its testing of the helmet and stated that the helmet failed to meet minimum standards as required by California Vehicle Code (CVC) Section 27802. The DOT is currently in the process of conducting an investigation regarding the selling of these helmets as an approved type. It is unknown, at this time, whether DOT will issue a safety recall or if the manufacturer will be directed to recall the helmets.

"Effective immediately the helmet may no longer be sold as DOT approved. However, the CHP has been informed that the helmet manufacturer will continue to sell the helmet in California as a novelty helmet.

"The CHP will issue citations to individuals wearing the E & R helmet for violation of CVC Section 27803. Officers have been directed to refer individuals with questions to the location where the helmet was purchased.

"A pass-out that was developed to assist you in identifying these unapproved helmets is attached. Additionally, a copy of a pass-out depicting common approved helmet styles is attached. This information has been very helpful to CHP officers and may be useful to your officers or deputies. . . ."

After the issuance of Bulletin No. 34, Bianco, while wearing the E & R Fiberglass helmet, was cited twice by the CHP for violating section 27803. (On Apr. 4, 1993, Bianco received a third CHP citation for violating the helmet law as alleged in his verified "Cross-Complaint for Declaratory and Injunctive Relief" filed Apr. 8, 1993.)

In a June 10, 1992, letter to the NHTSA, the business manager of E & R Fiberglass stated the firm's intention to comply with NHTSA's request to recall the beanie helmets.

On August 19, 1992, NHTSA issued a consumer advisory press release that announced the recall of the beanie helmets by E & R Fiberglass.

On April 29, 1993, the trial court held a hearing on Bianco's second amended petition for writ of mandate in which the parties presented testimony and documentary evidence and argued their respective positions. The following day, the trial court issued its decision by minute order (1) denying Bianco's petition for writ of mandate, (2) striking Bianco's cross-complaint and (3) denying his motion for evidentiary and monetary sanctions.

On May 17, 1993, the trial court signed a "Judgment Denying Petition for Writ of Mandate" in which the court made the following findings:

"1. In accordance with the authority of § 1392(d) of the Traffic and Motor Vehicle Safety Act (hereinafter 'the Act') enacted by Congress in 1966, while states are limited by the 'supremacy clause' within the Act from establishing or continuing in effect any motorcycle helmet safety standard that is not identical to the Federal standard, no State is prevented or prohibited from enforcing any safety standard which is identical to a Federal safety standard.

"2. Pursuant to California Vehicle Code §§ 26103, 27802, 27803 and Title 13 § 982 of the California Code of Regulations, in enacting its own motorcycle helmet laws California has in fact enacted the identical Federal motorcycle helmet safety standard found in Federal Motor Vehicle Safety Standard 218 (hereinafter 'FMVSS 218') (49 C.F.R. § 571.218).

"3. In accordance with the terms of the Act, although in the first instance manufacturers are authorized, indeed required before sale, to self-certify that their helmets meet the standard of FMVSS 218, that self-certification creates only a rebuttable presumption that such helmets meet FMVSS 218.

"4. In accordance with provisions of the Act, that presumption may be rebutted by a determination of non-compliance issued by the National Highway Transportation Safety Administration (hereinafter 'NHTSA') of the Department of Transportation, by a manufacturer recall of its product, or by any other competent objective evidence which establishes that in fact a given manufacturer's helmet does not meet the safety standards of FMVSS 218.

"5. In the present case although the E & R fiberglass beanie helmet at issue did have a self-certification sticker, the presumption created thereby was rebutted both by E & R's own agreement to recall its helmets and by

competent objective evidence from two independent laboratory tests commissioned by NHTSA to examine numerous E & R fiberglass beanie helmets.

"6. Uncontradicted evidence from both sets of independent laboratory tests showed that the E & R fiberglass beanie helmet failed five of six major areas of testing, including minimum impact absorption requirements, penetration resistance requirements, and retention requirements.

"7. Based on this competent objective evidence the California Highway Patrol was and is entitled to cite motorcycle drivers and passengers who wear the E & R fiberglass beanie on the highways for violation of CVC § 27803 which prohibits the *use* of helmets not meeting FMVSS 218.

"8. The issuance of citations for such violations is neither arbitrary, capricious, nor unlawful and well within the broad police powers vested in law enforcement agencies by the Legislature.

"9. Accordingly, the issuance of CHP Bulletin #34 was and is also proper and lawful.

"10. Bulletin #34 is neither a statute, nor regulation, nor does it claim to be. Rather, it is an informational bulletin intended for state-wide distribution to all California Highway Patrol offices and allied agencies advising that the E & R fiberglass beanie helmet may no longer be considered DOT approved and advising that henceforth the California Highway Patrol would cite all wearers of the E & R fiberglass beanie helmet for violation of CVC § 27803.

"11. Inasmuch as its issuance rests on competent objective evidence that E & R fiberglass beanie helmets do not comply with the minimum safety standards of FMVSS 218, the California Highway Patrol was lawfully entitled to issue such bulletin and other appropriate press releases putting the public on notice of that fact and advising that effective immediately all users of such helmets on California highways would be cited.

"12. Equally unfounded is petitioner's claim that Bulletin #34 was issued on June 1, 1992 without authority because NHTSA did not issue an Advisory Bulletin indicating that the E & R fiberglass beanie helmet had been recalled until August 19, 1992.

"13. Although the NHTSA Advisory Bulletin noting the recall of E & R fiberglass beanie helmets was not published until August 19, 1992, the independent laboratory test results were issued in April of 1992 and provided an independent basis for issuance of Bulletin #34 on June 1, 1992." (Original italics.)

DISCUSSION

I

As we read Bianco's opening appellate brief, he challenges the May 17, 1993, judgment on nine points, which he discusses in paragraphs numbered 16 to 24 in the brief. We consider these points seriatim.[3]

A.

■ Bianco challenges the first two numbered findings of the May 17, 1993, judgment because he alleges the State of California has not enacted the identical safety standard found in FMVSS 218. The basis for this allegation, as we understand Bianco's brief, is that the federal law sets standards for the helmet manufacturer to meet (15 U.S.C. § 1392) and also provides for a procedure for the DOT to follow when it is shown a helmet does not meet the standard (15 U.S.C. § 1412 et seq.). Bianco is mixing apples (standards) and oranges (enforcement). These challenged findings in the May 17, 1993, judgment deal with the fact that Congress has preempted the field of standards for highway safety; these judgment findings do not address enforcement under the federal law.

The federal law has been succinctly explained as follows: "Congress enacted the National Safety Act in 1966 due to a prevailing need to establish uniform national safety standards for motor vehicles and motor vehicle equipment moving in interstate commerce. The Act stands as a comprehensive federal regulatory scheme contemplating detailed performance standards for particular motor vehicle equipment insured, in large part, through self-certification by manufacturers that the equipment conforms to these standards. Through an enforcement scheme directed toward manufacturers and distributors rather than purchasers, the Act reflects a basic congressional purpose to counter a serious national problem with deaths, injuries, and property damage resulting from traffic accidents. See generally 15 U.S.C. § 1381. Sales of equipment regulated under this statute are prohibited absent confirmation and certification of compliance with these standards by the manufacturer. Repurchase and replacement requirements, as well as substantial civil penalties, are included in the statute's enforcement scheme. *Id.*

---

[3]It also appears that Bianco challenges the April 30, 1993, minute order, assigning error to four statements contained therein. We need not address these assignments of error (contained in paragraphs numbered 1 through 15 of appellant's opening brief) because the April 30, 1993, minute order is not appealable. This minute order was not a final determination or judgment, but rather a statement of the trial court indicating what its decision will be. Even though the order was entered in the minutes, it is not an appealable judgment, but merely a tentative decision or the basis for a judgment to be made. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, §§ 3, 4, 5, pp. 454-456; Cal. Rules of Court, rule 232.)

§§ 1397-98." (*Juvenile Products Mfrs. Ass'n, Inc.* v. *Edmisten* (E.D.Mo. 1983) 568 F.Supp. 714, 716.) Pursuant to the federal act's mandate, comprehensive regulatory requirements were promulgated for motorcycle helmets. (See 49 C.F.R. § 571.218 (1993).)

The federal act also includes a preemption clause with respect to motor vehicle safety standards, which provides in pertinent part:

"(a)   The Secretary shall establish by order appropriate Federal motor vehicle safety standards. Each such Federal motor vehicle safety standard shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms.

"·.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(d) Whenever a Federal motor vehicle safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard." (15 U.S.C. § 1392, pp. 608-609.)

Thus, the federal law clearly preempts California, as well as any other state, from establishing its own motor vehicle equipment safety standards. (See, e.g., *Wood* v. *General Motors Corp.* (1st Cir. 1988) 865 F.2d 395.) The setting of standards is the activity that is preempted, not enforcement. (*Juvenile Products Mfrs. Ass'n, Inc.* v. *Edmisten, supra,* 568 F.Supp. 714, 719.) Outside of the issue of setting standards, we find no authority for Bianco's bald assertion that "the State is restricted to conduct permitted of NHTSA . . . ." The state Vehicle Code authorizes the CHP to adopt and enforce regulations establishing standards and specifications for safety helmets (§§ 26103, 27802), and the CHP has done so, adopting FMVSS 218 (Cal. Code Regs., tit. 13, § 982). The first and second numbered findings of the judgment correctly reflect this. Section 27803 makes it illegal to drive or ride on a motorcycle without a helmet that meets the federal standards. The CHP is empowered to enforce all laws regulating the operation of vehicles and the use of the highways. (§ 2400; see also § 2402.) This enforcement function is no way impeded by the federal act.

To the extent Bianco is complaining that the federal act was not complied with because the NHTSA has not brought charges against the manufacturer,

Bianco has no standing to air such a complaint in this proceeding; and in the context of this case such a complaint has no relevancy.

### B.

■ With regard to the third numbered judgment finding (helmet with self-certification sticker creates only a rebuttable presumption of compliance with federal standard), Bianco directs our attention to *Buhl* v. *Hannigan* (1993) 16 Cal.App.4th 1612, 1622 [20 Cal.Rptr.2d 740], wherein the Court of Appeal stated: "When sections 27802 and 27803 are harmonized, as they must be [citation], it is clear the law requires only that the consumer wear a helmet bearing a *certification* of compliance." This statement in *Buhl* was made in the context of refuting a constitutional attack on the helmet law as being too technical in prescribing a standard that cannot be understood by persons of ordinary intelligence. (*Ibid.*)

In *Buhl, supra,* four individual motorcyclists were seeking to enjoin enforcement of the state Mandatory Motorcycle Helmet Law. (16 Cal.App.4th at p. 1618, fn. 3.) No specific helmet was at issue in *Buhl,* whereas this case specifically deals with the "beanie" helmet manufactured by E & R Fiberglass—a helmet that has been found not to meet the federal standards. Here, this particular challenged finding of the judgment, which states the manufacturer's self-certification creates only a rebuttable presumption that such helmets meet the federal standard (see Evid. Code, § 602), is not necessarily inconsistent with *Buhl,* which was issued by the Court of Appeal approximately six weeks after the judgment here was filed. The federal statutory scheme contemplates an honor system in which manufacturers comply with detailed federal performance standards for motor vehicle equipment through self-certification. If a manufacturer determines that its helmet conforms to the federal standards and certifies that conformity by labeling the helmet with a DOT self-certification sticker, it is legal to sell that helmet under the federal law and it is legal under California law to drive a motorcycle while wearing that helmet until such time as that helmet has been shown not to conform to the federal standards. Once a helmet is shown not to conform to the federal standards—as was the case with the E & R Fiberglass "beanie" helmet—the presumption of compliance created by the self-certification label is rebutted. We conclude the statement in *Buhl* that consumer compliance with the state law only requires the consumer to wear a helmet bearing the DOT self-certification sticker does not apply when a helmet has been shown not to conform with federal standards *and* the consumer has actual knowledge of this fact. That the E & R Fiberglass "beanie" helmet does not comply with the federal standards is supported by the tests performed at the request of NHTSA by two independent testing facilities as well as by E & R

Fiberglass's agreement to recall the helmet. Also borne out by the record on appeal here is the fact that at least since his citations, Bianco has had actual knowledge of the determination that the "beanie" helmet did not conform to the federal standards. Exhibit D to Bianco's original petition for writ of mandamus is a September 25, 1992, letter to Bianco from the NHTSA stating, among other things, that the "beanie" helmet had been tested and shown not to comply with the federal standard.

## C.

■ Bianco attacks the fourth and fifth numbered judgment findings by attacking the evidence relied upon by the trial court to conclude the rebuttable presumption created by self-certification was rebutted.

Bianco's first point is that the NHTSA did not make a formal determination of noncompliance with regard to the beanie helmet. However, the judgment here did not rely on NHTSA making a formal determination of noncompliance to find the rebuttable presumption had been rebutted; rather, the judgment relied on E & R Fiberglass's agreement to recall the helmets (see 15 U.S.C. §§ 1411-1419) and the test results from the two independent laboratories.

Bianco next argues there was never a valid recall because E & R Fiberglass's agreement to recall the beanie helmet was somehow coerced and also rescinded. To support this argument, Bianco relies on a January 12, 1983, sworn declaration from the business manager of E & R Fiberglass that states in pertinent part that neither he "nor any other authorized agent for E & R Fiberglass, Inc., has made, nor agreed to make, a formal determination of noncompliance of the E & R Helmet with Federal Standard No. 218." This declaration does not establish coercion. Moreover, the record contains correspondence dated June 10, 1992, from the same business manager informing NHTSA that E & R Fiberglass intends to initiate a recall campaign on the beanie helmet. The record also contains a letter from the president of E & R Fiberglass, received by NHTSA's office of chief counsel on October 1, 1992, indicating the firm had initiated the recall campaign and had opted to pay a $10,000 fine by installments. We do not read the business manager's later declaration as evidence showing an intent to rescind the agreement to recall. In any event, under established principles of appellate review, we find there is substantial evidence to support the trial court's finding that the manufacturer had agreed to recall the beanie helmet. (See generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289.)

Bianco next argues that the laboratory test results of noncompliance with FMVSS 218 are "unconfirmed, uncertified, test results." Throughout his

opening brief, Bianco attacks the laboratories' test results because they were not conducted by the DOT and the test reports contain a government disclaimer. These attacks have no merit. While the law may reflect a congressional preference for testing by public agencies (see 15 U.S.C. § 1406), the law does not require such testing; in other words, the fact the tests were conducted by independent laboratories does not make the test results invalid under the law. It is clear the private laboratories conducted the testing at the behest of DOT's NHTSA and that subsequently NHTSA adopted the results of the reports. The government disclaimers are of no import; until the reports are adopted by NHTSA, the results of the reports are "not necessarily" those of the government.

## D.

Bianco also challenges the fourth and fifth numbered judgment findings by referring to the above quoted sentence in *Buhl* v. *Hannigan, supra,* 16 Cal.App.4th 1612, 1624, as providing the "ultimate (unrefutable) proof that a consumer has complied with the law." As we have previously pointed out, the statement in *Buhl* does not apply to situations in which there has been a determination of noncompliance with the federal standards *and* the consumer has actual knowledge of such determination. Thus, the quoted sentence from *Buhl* is not applicable to this case.

## E.

Bianco takes issue with the phrase "uncontradicted evidence" in the sixth numbered judgment finding. He argues a review of the transcript of this hearing will show that he in fact challenged the admission into evidence of the test results on three grounds. However, the record on appeal contains no reporter's transcript of the hearing; therefore, it is not possible for us to make such a review. It was Bianco's responsibility to include the reporter's transcript. (*Buckhart* v. *San Francisco Residential Rent etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036 [243 Cal.Rptr. 298].) "A fundamental principle of appellate practice is that an appellant ' "must affirmatively show error by an adequate record. . . . Error is never presumed. . . . 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .' " ' " (*Null* v. *City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532 [254 Cal.Rptr. 492], citations omitted, original italics.)

"When a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys. . . . Further, the in propria persona litigant is held to the same restrictive rules of

procedure as an attorney." (*Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 638, 639 [178 Cal.Rptr. 167], citations omitted, questioned on another ground in *Dumas* v. *Stocker* (1989) 213 Cal.App.3d 1262, 1267, fn. 13 [262 Cal.Rptr. 311].)

### F.

Bianco takes issue with the seventh numbered judgment finding, arguing section 27803 does not prohibit the use of helmets not meeting FMVSS 218. First, Bianco argues section 27803 does not refer to FMVSS 218. This argument ignores the reference to FMVSS 218 in section 27802, which is incorporated by reference in section 27803. (See also Cal. Code Regs., tit. 13, § 982, p. 64 ["Motorcycle and motorized bicycle safety helmets governed by Vehicle Code section 27802 shall meet Federal Motor Vehicle Safety Standard No. 218."].) Bianco also relies on the above quoted sentence from *Buhl* v. *Hannigan, supra,* 16 Cal.App.4th 1612, 1622: "When sections 27802 and 27803 are harmonized, as they must be . . . , it is clear the law requires only that the consumer wear a helmet bearing a *certification* of compliance." As we have already stated twice, the quoted sentence from *Buhl* does not apply to situations in which there has been a determination that the helmet does not conform to the federal standards *and* the consumer has actual knowledge of such determination.

### G.

Bianco attacks the seventh through the tenth numbered judgment findings, again relying on *Buhl* v. *Hannigan, supra,* 16 Cal.App.4th 1612, 1622, to argue that CHP Bulletin No. 34, among other things, is absurd. Contrary to Bianco's assertion, the Court of Appeal in *Buhl* did not in any way indicate CHP Bulletin No. 34 was "absurd." In fact, the *Buhl* decision does not address or mention CHP Bulletin No. 34 in any fashion.

### H.

Bianco attacks the 11th numbered judgment finding to the extent it relies on competent objective evidence the E & R Fiberglass beanie helmets do not comply with FMVSS 218 standards. Bianco argues there is no such evidence because the private laboratory tests were not conducted by a federal agency and the DOT has not made a formal determination of noncompliance. This is a rehash of arguments we have addressed above in part I C, *ante,* and does not warrant further discussion.

### I.

Bianco attacks the 12th and 13th numbered judgment findings (dealing with CHP Bulletin No. 34) on due process grounds. Bianco notes the CHP

issued the bulletin before the NHTSA informed the public of the beanie helmet recall via its consumer advisory on August 19, 1992. However, the consumer advisory was not the only basis for CHP Bulletin No. 34; the test results from the two independent laboratories provided an independent basis for CHP Bulletin No. 34. Again, Bianco is confusing the setting of safety standards, which is an area preempted by federal law, with enforcement, which is not a preempted area.

In sum, we find no merit in any of the errors asserted by Bianco with respect to the findings in the May 17, 1993, judgment.

## II

■ Bianco assigns error to the trial court's ruling striking his cross-complaint for injunctive and declaratory relief against the CHP. We find no error.

Code of Civil Procedure section 428.10 provides in pertinent part: "A party against whom a cause of action has been asserted in a complaint or cross-complaint may file a cross-complaint . . . ." (See also *Dabney* v. *Shippey* (1974) 40 Cal.App.3d 990 [115 Cal.Rptr. 526].) Bianco was not a defendant in any complaint or a cross-defendant in any cross-complaint filed by the CHP. Moreover, as Bianco acknowledges in his reply brief, the cross-complaint was filed in conjunction with "a completely separate case originally brought in the Municipal Court." He further acknowledges the cross-complaint "should not have been . . . involved in this case in any pertinent way." In light of these acknowledgments, it appears that Bianco has waived the error.[4]

### DISPOSITION

Affirmed.

Kremer, P. J., and Work, J., concurred.

A petition for a rehearing was denied May 24, 1994.

---

[4]Bianco persists, however, in asserting that the superior court erred in assigning the cross-complaint the same case number as his petition for a writ of mandate. We note there is nothing in the record, other than Bianco's bald assertion, that the fault for the assignment of the same case number should be attributed to the superior court rather than Bianco.