[No. 64336-9. En Banc.]

Argued October 14, 1997. Decided January 8, 1998.

THE CITY OF BREMERTON, *Petitioner*, v. JOHN L. SPEARS, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. JOHN L. SPEARS, *Respondent*.

144

*Russell D. Hauge, Prosecuting Attorney for Kitsap County,* and *Pamela B. Loginsky, Deputy,* for petitioners.

*Martin D. Fox;* and *Christine O. Gregoire, Attorney General,* and *S. Kim O'Neal* and *William B. Collins, Assistants,* for respondent.

GUY, J. — Two issues are before us in this case. The State asks us to clarify whether the Court of Appeals has jurisdiction in cases involving review of civil traffic infractions involving small fines. John Spears and the State ask us to decide whether the mandatory motorcycle helmet statute, as implemented by the current administrative rule defining helmets, is constitutional. We hold that the Court of Appeals does not have jurisdiction, and that there is no constitutional defect in the regulation implementing the mandatory helmet law.

## FACTS

John Spears was cited for traffic infractions on five occasions in 1995 for violating the Head Injury Prevention Act of 1990 by not wearing a helmet while riding his motorcycle. The Act prohibits the operation of a motorcycle without wearing an approved helmet. RCW 46.37.530. Each of the notices of infraction listed the fine as $66. The hearing on two of the violations was before the Bremerton Municipal Court and the hearing on the other three was before the Kitsap County District Court. Mr. Spears challenged the constitutionality of the statute in both courts, arguing that the Act, as implemented by the rule setting the standards

for approved helmets, was unconstitutionally vague. Mr. Spear's challenge failed in the Bremerton Municipal Court. The court found that the helmet statute was not unconstitutionally vague and imposed a fine of $33 for each of the infractions. However, in the Kitsap County District Court, a judge pro tem found the statute to be unconstitutionally vague and dismissed the citations.

Mr. Spears appealed the municipal court decision and the State appealed the district court decision. The appeals were consolidated by the superior court, which upheld the constitutionality of the statute. Mr. Spears then sought review in the Court of Appeals. The City and State moved to transfer the request for discretionary review to this Court on the ground that the Court of Appeals did not have jurisdiction. Commissioner Weathersby granted that motion, finding that under RCW 2.06.030 the Court of Appeals lacks jurisdiction to hear civil matters where the original amount in controversy is less than $200. Mr. Spears moved to modify the Commissioner's ruling. The Court of Appeals granted the motion and reinstated the appeal. The City and State sought review of the jurisdictional issue in this Court and supported Mr. Spears' request to address the constitutionality of the helmet statute because of the conflicting decisions being issued by courts of limited jurisdiction regarding that law.

We accepted review of both the jurisdictional question and the issue involving the constitutionality of the helmet law.

## JURISDICTIONAL ISSUE

Does the Court of Appeals have jurisdiction to grant review of a case involving a civil traffic infraction when the original amount in controversy is less than $200?

### ANALYSIS

The State of Washington and the City of Bremerton

argue that while this Court has jurisdiction of civil cases when the amount in controversy is less than $200 in certain situations, including when the constitutionality of a statute is at issue, the Court of Appeals does not have jurisdiction in civil cases when the amount in controversy is less than $200.

■ ■ There is no constitutional right to appeal in civil cases; the right exists in civil cases when granted by the Legislature or at the discretion of the court. *In re Dependency of Grove*, 127 Wn.2d 221, 239, 897 P.2d 1252 (1995). Our statute gives the superior courts appellate jurisdiction in cases arising in courts of limited jurisdiction. RCW 2.08.020. Mr. Spears had the right to appeal to the superior court the judgment that he had committed an infraction. IRLJ 5.1. All parties agree he had that first right of appeal. At issue in this case is only the question of from which court may he seek further, discretionary, review.

The Court of Appeals was created in 1968 and its jurisdiction was set by statute. CONST. art. IV, § 30(2) (amend. 50). RCW 2.06.030 establishes the jurisdiction of the Court of Appeals:

> Subject to the provisions of this section, the [Court of Appeals] shall have exclusive appellate jurisdiction in all cases except:
>
> (a) cases of quo warranto, prohibition, injunction or mandamus directed to state officials;
>
> (b) criminal cases where the death penalty has been decreed;
>
> (c) cases where the validity of all or any portion of a statute, ordinance, tax, impost, assessment or toll is drawn into question on the grounds of repugnancy to the Constitution of the United States or of the state of Washington, or to a statute or treaty of the United States, and the superior court has held against its validity;
>
> (d) cases involving fundamental and urgent issues of broad public import requiring prompt and ultimate determination; and
>
> (e) cases involving substantive issues on which there is a

direct conflict among prevailing decisions of panels of the court or between decisions of the supreme court;

all of which shall be appealed directly to the supreme court . . . .

The appellate jurisdiction of the court of appeals does not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property does not exceed the sum of two hundred dollars.

The underlined portion of this 1969 statute was added in 1979. LAWS OF 1979, ch. 102, § 1.

The final bill report summary explains the changes made in 1979:

Courts of Appeals no longer have appellate jurisdiction over civil actions at law which involve the recovery of money or personal property valued at two hundred dollars or less. Litigants may no longer appeal as a matter of right those cases where a less-than-unanimous court of appeals decision has reversed a superior court decision. Discretionary review by the Supreme Court is still available. The result is that every litigant has one appellate review as a matter of right, and further review is at the discretion of the Supreme Court.

FINAL LEGISLATIVE REPORT, 46th Leg., 1st Reg. Sess. 33 (1979).

Article IV, section 4 of the Washington Constitution establishes the jurisdiction of this Court and contains the same language regarding the $200 amount in controversy. However, it also contains an exception clause to that limitation. Article IV, section 4 provides in relevant part:

The supreme court shall have . . . appellate jurisdiction in all actions and proceedings, excepting that its appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property does not exceed the sum of two hundred dollars ($200) *unless the action involves the legality of a tax, impost, assessment, toll, municipal fine, or the validity of a statute* . . . .

150

(Emphasis added.)

■ A court must dismiss an appeal when the lack of jurisdiction is apparent because the amount claimed does not reach the statutory amount of $200. *Green v. Nichols*, 40 Wn.2d 661, 663, 245 P.2d 468 (1952).

The Washington Appellate Practice Deskbook states:

> The Court of Appeals statutory lower limit, RCW 2.06.030, does not have the tax, fine or statute exception of the constitutional provision [Const. art. IV, § 4]. Thus, a civil action disputing the validity of a tax, but involving less than $200, might be reviewable only in the Supreme Court . . . .

1 WASHINGTON STATE BAR ASS'N, APPELLATE PRACTICE DESKBOOK § 9.2(4), at 9-7 (2d ed. 1993); *see also Yakima County Credit Serv., Inc. v. Mons*, 26 Wn. App. 911, 913, 614 P.2d 691 (1980).

■ ■ Mr. Spears argues that traffic infractions are not civil actions but are, rather, "quasi-criminal." We disagree. The Legislature has decriminalized many minor traffic offenses. RCW 46.63.010 states that the Legislature intended to decriminalize certain traffic offenses. A violation of Title 46 is designated as "a traffic infraction and may not be classified as a criminal offense," with the exception of a list of enumerated offenses. RCW 46.63.020. The mandatory helmet law is a part of Title 46 and is not included in the list of exceptions. Therefore, violation of the helmet law is a civil traffic infraction.

Mr. Spears also argues that the jurisdiction statute, RCW 2.06.030, was passed in 1969 and the law decriminalizing traffic infractions was not passed until 1979. He therefore concludes the 1969 statute was not intended to preclude the Court of Appeals from reviewing the constitutionality of traffic infractions. This argument is based on erroneous facts. The relevant section of the jurisdiction statute (setting the $200 limit for civil cases in the Court of Appeals) was added in 1979, the same year the Legislature decriminalized minor traffic infractions. LAWS OF 1979, ch. 102, § 1; LAWS OF 1979, 1st Ex. Sess., ch. 136, §§ 1-2.

 Mr. Spears argues that the Court of Appeals has jurisdiction because he raises a constitutional issue and that the amount in controversy is unimportant to his case. The problem with this argument is that the jurisdictional amount clause in the Court of Appeals statute is absolute, while the jurisdictional amount clause for this Court includes an exception for cases involving the constitutionality of a statute. The state constitutional provision describing the jurisdiction of this Court specifically gives this Court jurisdiction over challenges to the legality of municipal fines or to the validity of a statute, even when the amount in controversy is under $200. CONST. art. IV, § 4.

Mr. Spears also argues that RCW 2.06.030(c) reserves jurisdiction in the Court of Appeals for cases challenging the constitutionality of a statute. We disagree. That portion of the statute is an *exception* to the normal appellate jurisdiction of the Court of Appeals and provides for direct review to this Court for cases where a statute has been found to be unconstitutional.

Mr. Spears argues that even if the $200 limit applies, it is satisfied in this case. Mr. Spears does not argue that the fines can be added together to reach the $200 jurisdictional limit, and we agree this would not be proper. In discussing article IV, section 4, we have held that a number of actions by the same plaintiff against the same defendant cannot be aggregated in order to reach the $200 limit so as to confer jurisdiction. *State ex rel. Home Tel. & Tel. Co. v. Hurn*, 106 Wash. 362, 370, 180 P. 400 (1919). Mr. Spears does argue that some traffic infractions may carry fines of up to $250, and therefore the challenge to a traffic infraction satisfies the $200 jurisdictional requirement. We do not agree with this contention. The record shows that the fines sought were $66 for each offense. The fact that higher fines could have been imposed for other traffic infractions is irrelevant to the "original amount in controversy" in these cases. *See* RCW 2.06.030.

Mr. Spears also argues that traffic infractions carry the potential for two additional unwanted consequences: the

loss or impairment of driving privileges and an increase in insurance rates. Mr. Spears relies on *Thao v. Control Data Corp.*, 57 Wn. App. 802, 790 P.2d 1239 (1990). The *Thao* case involved a suit arising out of a store employee's alleged failure to properly transcribe the winning number from the customer's play slip to the lottery ticket. The Court of Appeals merely held that it could exercise appellate jurisdiction because the amount in controversy was the third of the million dollar lottery prize. That case does not support Mr. Spears' contention that consequences not directly involved in the case are considered to establish the jurisdictional amount. Collateral consequences such as a possible increase in insurance costs are not amounts which are "in controversy."

We conclude generally that neither this Court nor the Court of Appeals has jurisdiction over civil cases which involve less than $200. However, this Court may accept review of such a case if the action involves the legality of a tax, impost, assessment, toll, municipal fine, or the validity of a statute. Cases in which such a small amount is in controversy will, however, seldom be accepted for review by this Court. The criteria of RAP 2.3(d),[1] applicable to discretionary review of a superior court decision entered after a review of a decision of a court of limited jurisdiction, is very narrow. Additionally, there is no jurisdiction over controversies in which the amount involved is less than $200 when the matter does not go to the validity of the statute but only to the construction of the statute. *Bostwick v. Washington Motor Coach Co.*, 194 Wash. 178, 185,

---

[1]RAP 2.3(d) provides that discretionary review of a superior court decision entered in a proceeding to review a decision of a court of limited jurisdiction will be accepted only:

"(1) If the decision of the superior court is in conflict with a decision of the Court of Appeals or the Supreme Court; or

"(2) If a significant question of law under the Constitution of the State of Washington or of the United States is involved; or

"(3) If the decision involves an issue of public interest which should be determined by an appellate court; or

"(4) If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by the court of limited jurisdiction, as to call for review by the appellate court."

77 P.2d 790 (1938). As noted above, review by this Court of such cases (even when a statute's constitutionality is questioned) is discretionary. RCW 46.63.090(5).

We therefore reverse the Court of Appeals order modifying the Commissioner's ruling and hold that the Court of Appeals does not have jurisdiction to review civil traffic cases in which the original amount in controversy is less than $200.

## MOTORCYCLE HELMET LAW ISSUES

Does the Washington motorcycle helmet statute, RCW 46.37.530, violate the Fourth Amendment of the United States Constitution? Is that statute, as implemented by WAC 204-10-040, unconstitutionally vague? May a party challenge whether a rule was adopted in compliance with the Administrative Procedure Act's rule-making procedures when the agency which promulgated the rule is not a party to the action?

ANALYSIS

Background

Washington's current motorcycle helmet law was enacted as part of the Head Injury Prevention Act of 1990.[2] LAWS OF 1990, ch. 270. The Legislature found that

> head injury is a major cause of death and disability for Washington citizens. The costs of head injury treatment and rehabilitation are extensive and resultant disabilities are long and indeterminate. These costs are often borne by public programs such as medicaid. The legislature finds further that many such injuries are preventable. The legislature intends to

---

[2]In 1967, the Washington Legislature enacted an earlier mandatory motorcycle helmet law. This Court held that the statute, which required anyone who rides a motorcycle on the public streets to wear an administratively prescribed protective helmet, was a constitutional exercise of the police power. *State v. Laitinen,* 77 Wn.2d 130, 459 P.2d 789 (1969), *cert. denied,* 397 U.S. 1055 (1970); *see also State v. Zektzer,* 13 Wn. App. 24, 533 P.2d 399, *review denied,* 85 Wn.2d 1013, *cert. denied,* 423 U.S. 1020 (1975).

reduce the occurrence of head injury by educating persons whose behavior may place them at risk and by regulating certain activities.

LAWS OF 1990, ch. 270, § 2 (codified at RCW 43.70.400). The law includes a provision which prohibits riding a motorcycle without an approved helmet. RCW 46.37.530 provides in relevant part that

(1) It is unlawful:

. . . .

(c) For any person to operate or ride upon a motorcycle . . . on a state highway, county road, or city street unless wearing upon his or her head a protective helmet of a type conforming to rules adopted by the state patrol . . . .

. . . .

(e) For any person to sell or offer for sale a motorcycle helmet which does not meet the requirements established by the state patrol.

. . . .

(2) The state patrol is hereby authorized and empowered to adopt and amend rules, pursuant to the administrative procedure act, concerning the standards and procedures for conformance of rules adopted for glasses, goggles, face shields, and protective helmets.

In 1990, in accord with the directions of this statute, the Washington State Patrol enacted WAC 204-10-040, which provided in its entirety:

Federal Motor Vehicle Safety Standard 218 is hereby adopted by reference as the standard for motorcycle helmets.

Former WAC 204-10-040.

This regulation was challenged, and the Court of Appeals held that this rule was unconstitutionally vague. *State v. Maxwell*, 74 Wn. App. 688, 874 P.2d 1390, 878 P.2d 1220 (1994). The court held that the regulation failed to inform the average citizen of the legal citation of the federal stan-

dard it adopted. The court also held that even if citizens could locate the federal standard, they would not be able to tell which protective helmet met those requirements. The court said that in adopting the entire regulation, the State Patrol had made it impossible for ordinary citizens to understand what is required to comply with the statute and that the Patrol should redraft the rule so that ordinary citizens would know what to look for to be certain they are complying with the law. *Maxwell*, 74 Wn. App. at 692.

In response to *Maxwell*, the State Patrol enacted a new rule which provides:

> (1) The Washington state patrol has hereby adopted by reference, Federal Motor Vehicle Safety Standard 218 (49 C.F.R. Sec. 571.218) as the standard for motorcycle helmets.

> (2) *Motorcycle helmets are to meet the following Federal Motor Vehicle Safety Standard 218, labeling requirements. Each helmet shall be labeled permanently and legibly, in a manner such that the label(s) can be read easily without removing padding or any other permanent part, with the following:*

> (a) Manufacturer's name or identification.

> (b) Precise model designation.

> (c) Size.

> (d) Month and year of manufacture. This may be spelled out (e.g., June 1988), or expressed in numeral (e.g., 6/99).

> (e) *The symbol DOT, constituting the manufacturer's certification that the helmet conforms to the applicable Federal Motor Vehicle Safety Standard. This symbol shall appear on the outer surface, in a color that contrasts with the background, in letters at least three-eighths inch (one centimeter) high.*

> (f) Instructions to the purchaser as follows:

> (i) "Shell and liner constructed on (identify type(s) of materials)."

> (ii) "Helmet can be seriously damaged by some common substances without damage being visible to the user. Apply

only the following: (Recommended cleaning agents, paints, adhesives, etc., as appropriate.)"

(iii) "Make no modifications. Fasten helmet securely. If helmet experiences a severe blow, return it to the manufacturer for inspection, or destroy it and replace it."

(iv) Any additional relevant safety information should be applied at the time of purchase by means of an attached tag, brochure, or other suitable means.

(3) If a motorcycle helmet meeting the above federal requirements is to be equipped with an electronic device for transmitting sound, the speaker portion, affixed to the helmet, must not enter or completely block the ear canals.

WAC 204-10-040 (emphasis added). This newer rule became effective October 30, 1994.

■ While the Washington statute has given the State Patrol the authority to adopt a regulation to define an approved helmet, federal law has mandated that the states use the federal safety standards for motor vehicle equipment when a safety standard has been established under the National Traffic and Motor Vehicle Safety Act of 1966. *Wood v. General Motors Corp.*, 865 F.2d 395 (1988), *cert. denied*, 494 U.S. 1065 (1990);[3] *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533, 542 (1992); *Bianco v. California Highway Patrol*, 24 Cal. App. 4th 1113, 29 Cal. Rptr. 2d 711, 715-16 (1994).

Congress passed the Motor Vehicle Safety Act to reduce traffic accidents, deaths and injuries, 49 U.S.C. § 30101 (former 15 U.S.C. § 1381), and the Act directed the Secretary of the Department of Transportation (DOT) to establish motor vehicle safety standards. 49 U.S.C. § 30111 (former 15 U.S.C. § 1392(a)). Congress included a preemption clause in that Act which provides that whenever a federal safety standard established under that statute is in effect, a state may prescribe or continue in effect a safety stan-

---

[3]We recognize there is a large body of law debating the preemption issue as it relates to products liability and common-law tort action. That subject is outside the scope of the issues presented in this case.

dard applicable to the same aspect of performance of a vehicle or item of equipment only if the standard is identical to the federal standard. 49 U.S.C. § 30103(b). *See also* former 15 U.S.C. § 1392(d). Pursuant to that Act, the Secretary of the DOT adopted Federal Motor Vehicle Safety Standard 218, which establishes the minimum performance requirements for motorcycle helmets. 49 C.F.R. § 571.218 (1996). Therefore, the State Patrol acted pursuant to federal law when it adopted the federal safety standard as the standard for helmets in Washington. The Supremacy Clause requires that this state's helmet law be consistent with the federal regulations as to the performance and safety requirements for motorcycle helmets. *E.g., Robotham*, 488 N.W.2d at 542.

Mr. Spears does not challenge the fact that the State may enact a mandatory helmet law for motorcyclists. It is settled law that a state may constitutionally enact such a law.[4] Mr. Spears argues that (1) this state's helmet law results in Fourth Amendment violations as a result of unconstitutional seizures caused by the vagueness of the helmet law; (2) the statute, as implemented by the amended rule, violates the Constitution because it is vague with respect to which helmet satisfies the requirements of the law; and (3) WAC 204-10-040 was improperly adopted under the Administrative Procedure Act, RCW 34.05.

### Fourth Amendment Challenge

 Mr. Spears argues that the current version of WAC 204-10-040 violates the Fourth Amendment to the

---

[4] Mandatory helmet laws that have delegated authority to officials to set safety standards have been held constitutional in this state and in many states. *Laitinen*, 77 Wn.2d 130; *Cesin v. State*, 288 So. 2d 473, 474 n.8 (Fla. 1974) (citing cases). The courts have upheld such laws against numerous types of constitutional challenges. *See, e.g., State v. Merski*, 113 N.H. 323, 307 A.2d 825, 826 (1973); *Love v. Bell*, 171 Colo. 27, 465 P.2d 118, 122-23 (1970). The Supreme Court has found that a mandatory helmet law is a reasonable exercise of legislative power. *Simon v. Sargent*, 346 F. Supp. 277 (D. Mass.), *aff'd mem.*, 409 U.S. 1020 (1972); *see Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533, 540 (1992).

federal constitution.[5] He argues that an officer violates the Fourth Amendment prohibition against unreasonable searches and seizures when issuing a citation for a substandard helmet without probable cause to believe that the motorcyclist has violated the helmet law, or when making a traffic stop without reasonable suspicion of violation of WAC 204-10-040. The State and City argue that Mr. Spears does not have standing to argue that enforcement of the helmet law is improper as to individuals who are wearing nonconforming helmets and, since he was not wearing any helmet, an officer would clearly have had probable cause to believe he was violating the helmet law. We agree.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." Temporary detention of individuals during the stop of a vehicle by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of persons within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996). A vehicle stop is therefore subject to the constitutional imperative that it not be "unreasonable" under the circumstances. *Whren*, 116 S. Ct. at 1772. The Supreme Court recently clarified constitutional reasonableness in the context of vehicle stops for traffic infractions. The Court concluded that a traffic stop is reasonable under the Fourth Amendment when an officer has probable cause to believe a person has violated the traffic code. *Whren,* 116 S. Ct. at 1772, 1777.

Mr. Spears, in essence, argues that the Fourth Amendment may be violated in some cases because the rule

---

[5]While Mr. Spears summarily states that the helmet law violates the Fourth Amendment and "parallel protections" of the Washington Constitution, he has not indicated on which state constitutional provision he relies, nor has he addressed the criteria identified in *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808, 76 A.L.R.4TH 517 (1986). Therefore, Mr. Spears' claims are decided under federal constitutional law. *City of Spokane v. Douglass*, 115 Wn.2d 171, 176-77, 795 P.2d 693 (1990).

implementing the helmet statute is vague so that officers would not be able to recognize a legal helmet. He appears to be arguing that officers might stop riders who are wearing helmets which do not appear to comply with the law but are, in fact, legal helmets. Mr. Spears does not have standing to raise this issue. Mr. Spears may not raise the rights of others when the officers who stopped him had probable cause to believe he was violating the traffic code. It is settled law that vagueness challenges to enactments which do not involve First Amendment rights are evaluated in light of the particular facts of each case. *City of Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990); *State v. Hegge*, 89 Wn.2d 584, 589, 574 P.2d 386 (1978); *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988). Riding a motorcycle without a helmet does not involve a First Amendment right. *Benning v. State*, 161 Vt. 472, 641 A.2d 757, 764 (1994); *Buhl v. Hannigan*, 16 Cal. App. 4th 1612, 20 Cal. Rptr. 2d 740, 748 (1993); *State v. Quinnam*, 367 A.2d 1032, 1033-34 (Me. 1977). A law is tested for unconstitutional vagueness by inspecting the facts of the case before us and not by examining hypothetical situations. *Douglass*, 115 Wn.2d at 182-83; *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). Since Mr. Spears was not wearing any helmet, the officers had probable cause to believe he was violating the mandatory helmet law. There is no evidence in the record before the Court that officers in Washington have any policy or pattern of stopping motorcyclists for helmet violations without probable cause to believe they are violating the law.

Mr. Spears relies on *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 887 F. Supp. 240 (S.D. Cal. 1995), *vacated in part*, 92 F.3d 1486 (9th Cir. 1996), for the proposition that helmet laws which require officers to make stops and issue citations based on hunches are violative of the Fourth Amendment. Mr. Spears' reliance on the federal trial court case is misplaced, as the Ninth Circuit has vacated it in

part.[6] In *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1497, 1502 (9th Cir. 1996), the Ninth Circuit considered the Fourth Amendment issue and concluded that officers may stop a motorcyclist based on the apparent nonconformity of a helmet with Federal Safety Standard 218. (That case went on to discuss the more difficult issue of when an officer can *cite* a motorcyclist when he or she is wearing a helmet labeled "DOT" but one that appears not to conform to the federal safety standards.) The Ninth Circuit concluded that an officer making an investigatory stop need not have reasonable suspicion that a motorcyclist has actual knowledge of a helmet's noncompliance if other factors, including the appearance of the helmet, are sufficient to establish reasonable suspicion that the helmet law is being violated. *Easyriders*, 92 F.3d at 1498. *Easyriders* does not support Mr. Spears' Fourth Amendment argument. The court explained that even when a motorcyclist is wearing an apparently nonconforming helmet, an officer does not violate the Fourth Amendment when the rider is stopped and put on notice that the helmet does not satisfy the requirements of the helmet law.

> Investigatory stops of motorcyclists with apparently non-complying helmets serve the dual purpose of identifying individuals who are intentionally violating the law, and informing riders who are unknowingly wearing non-complying helmets that their helmets do not comply and possibly will not protect them sufficiently in the case of an accident. Any minimal intrusion imposed upon individuals whose helmets *do* comply with helmet laws is justified by the furtherance of

---

[6]The part of the lower court injunction that the Ninth Circuit left in place was that the California Highway Patrol have probable cause to believe that motorcyclists who are *wearing helmets that were certified at the time of purchase* have actual knowledge of the helmet's noncompliance with Standard 218 before they are cited for noncompliance with the helmet law. (The federal scheme puts the original duty on manufacturers to certify compliance of the helmet with the federal standards. However, the National Highway Transportation Safety Administration will occasionally contract with private testing labs to test selected helmets to determine compliance with federal regulations. If found not to be in compliance, the manufacturers are required to notify owners and to stop selling noncomplying helmets with DOT certification. Manufacturers who do not recall such helmets are subject to substantial fines. *Easyriders*, 92 F.3d at 1491.)

these important government goals, and the underlying California policy goal of providing "an additional safety benefit" to its motorcyclist citizens.

*Easyriders*, 92 F.3d at 1497-98.

Since Mr. Spears was not wearing any helmet, the officers who stopped him clearly had probable cause to believe he was violating the mandatory helmet requirement. Probable cause is the predicate for a lawful traffic stop. *Whren*, 116 S. Ct. 1769. We reject Mr. Spears' Fourth Amendment challenge.

## Vagueness Challenge

Mr. Spears also argues that under the helmet law, even as implemented by the newer regulation enacted by the State Patrol, ordinary citizens remain unable to determine which helmets they are required to wear. The State and City argue that the newer regulation gives fair notice of what helmets must be worn. They argue that the amended rule is not vague because all that is required of a person buying a motorcycle helmet is to look at the helmet to see if it has the required labels.

 Under the Administrative Procedure Act, a rule may be declared invalid by a court if it violates constitutional provisions. RCW 34.05.570(2)(c). Mr. Spears argues that the rule defining helmets is unconstitutionally vague. In a void-for-vagueness challenge, the one making the challenge must show that either (1) the statute does not define the offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement. *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). A law is unconstitutional when it forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application. Such a law would violate the essential element of due process of law—fair warning. *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986).

 Normally this Court looks to the specific facts of a case in analyzing a vagueness challenge not involving the First Amendment. However, in this case Mr. Spears' argument is that he could not determine from the regulation what helmet he should purchase. Furthermore, lower courts throughout the state are in conflict whether the newer rule enacted by the State Patrol is sufficient to put motorcyclists on notice of what helmet they can purchase to meet the requirements of the helmet statute. We therefore will decide the issue of whether the regulation gives adequate notice of what helmet is required to satisfy the law. *See High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986) (even though standing was tenuous, not deciding the challenge would result in repetitive and time-consuming litigation).

 Mr. Spears insists that ordinary people cannot understand from reading the rule which helmet to wear. We disagree. Based upon the plain language of the regulation and on authority from other jurisdictions, we conclude the law is not unconstitutionally vague. The federal law, quoted in the Washington rule, requires that *manufacturers certify* that their helmets comply with the federal standards by applying a permanent label, reading "DOT," in a prominent manner on the outside of the helmet. Several other states have held that a motorcyclist can avoid violating similar laws by buying any motorcycle helmet which is labeled "DOT" by the manufacturer. *Robotham*, 488 N.W.2d at 545; *Benning*, 641 A.2d at 763-64 (the method to determine which helmets have been approved is by looking at the labeling). In *Buhl*, 16 Cal. App. 4th 1612, motorcyclists challenged the California mandatory motorcycle helmet law. One of the grounds asserted was that because California had used Federal Motor Vehicle Safety Standard 218, 49 C.F.R. § 571.218 (as we do in this state), the law was void for vagueness in that it prescribes a standard which cannot be understood by persons of ordinary intelligence. The motorcyclists argued that neither motorcyclists nor police officers could tell whether a particular helmet

complies, and one would have to be an engineer to understand the regulations for a safe helmet. The California court rejected the argument, saying that underlying such an argument is the proposition that the statute requires the *consumer or officer* to decide if the helmet is properly fabricated and that such a reading is "absurd." The court said it was clear the law requires only that the consumer wear a helmet bearing a certificate of compliance applied by the manufacturer. *Buhl*, 20 Cal. Rptr. 2d at 745.

In the current regulation adopted by the Washington State Patrol, the labeling requirements from the federal law are included so that a purchaser will know to buy a helmet which is so labeled. We do not have before us a case where a motorcyclist was cited for wearing a helmet which was labeled according to the rule but which had been subsequently recalled. When that case arises, we will decide if the California court's inclusion of a mens rea requirement is appropriate. *See Bianco*, 24 Cal. App. 4th 1113.[7]

The State correctly contends that the issue for due process is adequate notice, that is, fair warning of what is prohibited. *E.g., Burien Bark Supply*, 106 Wn.2d at 871. The fact that a person cannot manufacture a helmet or understand manufacturing specifications is irrelevant; the labeling requirements of the federal and state regulations put a person on notice that he or she must wear a properly labeled helmet. The labeling certifies that a helmet meets

---

[7]After the *Buhl* case, *Bianco v. California Highway Patrol*, 24 Cal. App. 4th 1113, 29 Cal. Rptr. 2d 711 (1994) was decided. In *Bianco*, a motorcyclist challenged a California Highway Patrol bulletin that had declared that a helmet manufactured by a certain company did not comply with Standard 218, which resulted in Mr. Bianco being cited for violating the helmet law while wearing a helmet with a DOT label. He argued he could not be cited because the helmet had the DOT self-certification sticker at the time of his purchase. The *Bianco* court concluded that "the statement in *Buhl* that consumer compliance with the state law only requires the consumer to wear a helmet bearing the DOT self-certification sticker does not apply when a helmet has been shown not to conform with federal standards *and* the consumer has actual knowledge of this fact." *Bianco*, 29 Cal. Rptr. 2d at 717. *See also Easyriders*, 92 F.3d at 1494 (under California law, consumers comply with the helmet law as long as they are wearing a helmet that bore the DOT self-certification sticker at the time of purchase unless the helmet has been shown not to conform with federal standards and the consumer has actual knowledge of this fact).

the law's standards. We hold that the regulation adopted by the State Patrol is sufficiently clear to put a person of normal intelligence on notice of what conduct is prohibited.

## Rulemaking

In the RALJ appeal in this case, the superior court declined to decide whether the regulation implementing the helmet statute was properly promulgated under the rule-making procedures of the Administrative Procedure Act because the agency promulgating the rule, the State Patrol, had not been made a party to the proceeding. We agree with that decision. No facts regarding the rule-making procedures are before this Court.

Generally, the Administrative Procedure Act provides the exclusive means of judicial review of agency action. RCW 34.05.510. RCW 34.05.570(2)(a) provides in relevant part that "[i]n an action challenging the validity of a rule, the agency shall be made a party to the proceeding." *See also Boise Cascade Corp. v. Washington Toxics Coalition*, 68 Wn. App. 447, 451, 843 P.2d 1092 (1993) (judicial review of an agency rule is governed by RCW 34.05.570(2)(a) of the Administrative Procedure Act, which permits review in the context of any review proceeding under RCW 34.05.570 so long as the rule-making agency is a party). The State Patrol has never been a party to this action, and the proper promulgation of the rule is therefore not before this Court.

## CONCLUSION

We affirm the superior court and hold that Mr. Spears has not proved that the helmet statute, RCW 46.37.530, is unconstitutionally vague. Mr. Spears has not shown any violation of the Fourth Amendment in his case, and he does not have standing to assert the rights of others. Mr. Spears may not raise the issue of the compliance of the agency with rule-making procedures since the agency which promulgated the rule was never made a party to the action.

DURHAM, C.J., and DOLLIVER, SMITH, JOHNSON, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.

MADSEN, J., concurs in the result.