Filed 3/17/23 Marriage of Duncan CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re the Marriage of GRACE DUARTE AND JEROME DUNCAN. | |
| GRACE GALVAN DUARTE, | E075329 |
| Appellant, | (Super. Ct. No. RID1604626) |
| v. | OPINION |
| JEROME ANDREW DUNCAN, | |
| Respondent. | |

APPEAL from the Superior Court of Riverside County. Dorothy McLaughlin, Judge. Reversed in part, affirmed in part.

Holstrom, Block & Parke and Ronald B. Funk, for Appellant.

The Blonska Firm, Shannon R. Thomas and Jason A. Blonska, for Respondent

## I.

## INTRODUCTION

In this marriage dissolution action, appellant Grace Duarte challenges five aspects of the family court's distribution of property between her and her ex-husband, respondent Jerome Duncan, and the court's award of attorney's fees to Jerome. She also seeks appellate sanctions for Jerome's unsuccessful motion to dismiss her appeal as untimely. We reverse in part, affirm in part, and deny Grace's sanctions motion.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Grace and Jerome married in April 2012 and separated in July 2016. Grace petitioned to dissolve their marriage a few months later. During the proceedings, Jerome learned that Grace had given her son, Orlando Duarte, about $150,000 to pay for law school. Jerome then successfully moved to join Orlando to the case and asserted various fraud-based claims against him.[1]

The case concluded with a multi-day bench trial that resolved Grace and Jerome's remaining disputes over the distribution of 11 items of property. After the trial, the family court issued a tentative decision and solicited objections to it from the parties. The family court overruled Grace's objections, sustained Jerome's only objection, and tentatively awarded Jerome $80,000 in attorney's fees. The court later overruled Grace's

---

[1] The family court ruled entirely in Orlando's favor on Jerome's claims and entered judgment for him. Jerome does not challenge that judgment and Orlando is not a party to this appeal.

objections to the fee award and directed Jerome to submit a proposed judgment. The family court adopted Jerome's proposed 33-page judgment in full and entered judgment accordingly. Grace timely appealed.

## III.

## DISCUSSION

Grace argues the family court's judgment is erroneous in six respects. We address each in turn. Because *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252 (*Margulis*) guides Grace's argument about the first four items and our corresponding analysis, we address it first.

### 1. Margulis

In *Margulis*, the husband had "complete control" of the community's investment accounts and paid all of their bills during 33 years of marriage and 12 years of separation. (*Margulis*, *supra*, 198 Cal.App.4th at p. 1257.) Right before the dissolution trial, however, the husband disclosed that the investment accounts were "virtually empty," and attributed the losses to proper expenditures and stock market fluctuations. (*Ibid*.) The family court rejected the wife's argument that the husband bore the burden of proof of accounting for the funds that he controlled postseparation. (*Id*. at pp. 1265-1266.) The family court thus refused to charge the husband for those funds because the wife failed to rebut his argument that he used them on the community or lost them on the stock market. (*Id*. at pp. 1262-1263, 1265-1266.)

After an extensive analysis about burden-shifting, the court adopted the following rule: "[O]nce a nonmanaging spouse makes a prima facie showing concerning the existence and value of community assets in the control of the other spouse postseparation, the burden of proof shifts to the managing spouse to rebut the showing or prove the proper disposition or lesser value of these assets. If the managing spouse fails to meet this burden, the court should charge the managing spouse with the assets according to the prima facie showing." (*Margulis*, *supra*, 198 Cal.App.4th at p. 1267.)

Applying these rules, the *Margulis* court held that the husband, as the managing spouse, had a "duty to account for his *postseparation* management of" missing funds, and thus the burden shifted to him to prove they were properly used. (*Margulis*, *supra*, 198 Cal.App.4th at pp. 1266-1267, 1280.) The *Margulis* court therefore reversed because of the family court's "erroneous placement of the burden of proof" on the wife instead of the husband. (*Id*. at p. 1280.) The court declined to address the wife's arguments that the family court improperly charged her with two other items totaling nearly $150,000 because the family court's improper burden-shifting "as to the disposition of assets necessitates a complete retrial of the community property issues." (*Ibid*.)

### 2. *$29,100 Withdrawal*

In October 2014, while the parties were still married, Grace withdrew $29,100 from a bank account that was under her sole control and management (Chase #0218), but contained only community funds. Grace testified that she used the withdrawn funds to pay for community expenses because she liked to use cash, but did not give any further

4

specifics. Jerome disputed this, and claimed that Grace preferred paying for things with a check so that she would have a record.

The family court charged Grace for the $29,100 withdrawal. The court reasoned that the burden shifted to Grace under *Margulis* to prove that the withdrawal was for the benefit of the community, and she failed to meet that burden.

We agree with Grace that the family court incorrectly shifted the burden to her under *Margulis*. The burden-shifting rule announced in *Margulis* applies only to funds expended postseparation. (See *Margulis*, *supra*, 198 Cal.App.4th at pp. 1258, 1267.) But Grace made the $29,100 withdrawal while the parties were still married. *Margulis* therefore does not apply.

Because Grace withdrew the funds during marriage, there is a rebuttable presumption that she properly disposed of the funds for the community's benefit. (See Fam. Code, §§ 721, subd. (b), 760, 1100, subd. (a).) If Jerome disputed that Grace did so, he had the initial burden of rebutting the presumption by proving that Grace misappropriated the community funds for her benefit. (See Fam. Code, § 1101, subd. (a); *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 100.) The family court thus erroneously put the burden on Grace to prove that she used the funds for the community's benefit.

5

Without citing any authority or discussing *Margulis* and Grace's arguments, Jerome argues the family court's order should be upheld.[2]  In fact, Jerome does not mention *Margulis* anywhere in the argument section of his brief.  It is not until the conclusion section that Jerome mentions the case, when he argues without further explanation that the judgment should be affirmed "even if the [family] court misapplied [] *Margulis*."

We disagree.  We agree with Grace that the family court's improper application of *Margulis* erroneously shifted the burden to her, causing her to be charged for the $29,100 may not have been otherwise charged with had the family court correctly put the initial burden on Jerome.  We therefore reverse the family court's order charging Grace for the $29,100 withdrawal from the Chase #0218 account.

3. *$86,011 Withdrawal*

Grace also had sole management and control of another joint bank account, Chase #6122.  During Grace and Jerome's marriage, Grace withdrew $86,011 from the account. Again relying on *Margulis*, the family court charged Grace for these withdrawals, finding that she failed to meet her burden of proof that she spent the money for the community's benefit.

---

[2]  This portion of Jerome's respondent's brief, like the rest of the argument section of the brief, is largely copied-and-pasted from the family court's judgment with non-substantive revisions (e.g., changing the parties names, changing verb tenses).

6

For the reasons explained above, the family court misinterpreted and misapplied *Margulis*. As with the $29,100 withdrawal, Grace presumptively withdrew and used the $86,011 to benefit the community. (See Fam. Code, §§ 760, 1100, subd. (a).) It was Jerome's burden to prove that Grace did not do so before she could be charged for the funds. (See Fam. Code, §§ 721, subd. (b), 1101, subd. (a); *In re Marriage of Ciprari, supra*, 32 Cal.App.5th at p. 100.) The family court thus erroneously shifted the burden to Grace, which led to her being charged for the $86,011 in withdrawals from the Chase #6122 account. We therefore reverse the family court's order charging her for those funds.

4. *$13,808 in Schools First #0140 Account*

Grace had another bank account in her name, Schools First #0140, which she used during the marriage. At the date of separation, the account had $25,701 in it, $11,893 of which was Grace's separate property. Grace could not prove that the remaining $13,808 was her separate property, so the family court charged her for it as community property.

Grace argues the family court once again misapplied *Margulis* and inappropriately shifted the burden to her to prove that she did not misappropriate the $13,808. We disagree.

The family court did not mention *Margulis* in its order on the funds and did not erroneously shift the burden to Grace. The court correctly observed that the funds in the Schools First #0140 account were presumptively community property at the date of separation and that Grace had the burden to prove that they were her separate property, as

7

she argued. (See *In re Marriage of Ciprari*, *supra*, 32 Cal.App.5th at p. 91 ["'[T]here is a general presumption that property acquired during marriage by either spouse other than by gift or inheritance is community property unless traceable to a separate property source. [Citation.] This is a rebuttable presumption . . . [that] can be overcome by the party contesting community property status.'"].) Grace thus misreads the family court's order and, in so doing, fails to show the order was erroneous or prejudicial. We therefore affirm the order. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125 [appellant must show the trial court prejudicially erred].)

### 5. *$74,186 in Schools First #7814 Account*

Grace and Orlando jointly owned a bank account, Schools First #7814. While Grace and Jerome were still married, Grace gave Orlando a $150,000 cashier's check to pay for law school, which he deposited into the Schools First #7814 account. Grace claimed that Jerome knew about and consented to the gift. Jerome, on the other hand, claimed he could not have consented to the gift because he did not know about it until discovering it during the dissolution proceedings.

When the parties separated, the Schools First #7814 account had $159,279 in it, $85,093 of which was traced to Grace's separate property. The family court thus found the remaining $74,186 was community property and that "reimbursement is owed to the community from this account for the" $150,000 gift to Orlando. In doing so, the family court found that Grace's testimony that the "$150,000 was a gift to her son with

8

[Jerome's] consent does not meet her burden of proof that this transaction was for the benefit of the community."

Grace argues the family court yet again erroneously applied *Margulis* to shift the burden to her to prove that the $150,000 gift to Orlando was not for the community's benefit. But even if Grace is right, she overlooks the fact that the $150,000 was deposited into the Schools First #7814 account and remained there until the parties' separation. Given that those funds were presumptively community funds and Grace proved that only $85,093 of the funds were her separate property, the family court properly found that the remaining $74,186 was community property. We therefore affirm the family court's order charging Grace for the $74,186 in community funds in the Schools First #7814 account.

6. *Attorney's Fees*

In his closing trial brief, Jerome moved for about $114,000 in attorney's fees under Family Code sections 2030 and 2032.[3] Jerome argued awarding him fees was appropriate because "he has a need and [Grace] has the ability to pay." Jerome explained that Grace had about $400,000 in her bank accounts at the time of trial and made about $82,000 per month (or $984,000 per year) while he makes only about $136,000 per year and had to borrow $70,000 from his father to pay for attorney fees and litigation costs.

---

[3] All further statutory references are to the Family Code.

9

The family court awarded Jerome $80,000 in attorney's fees "[a]fter analyzing need and ability to pay and also the reasonableness of the free contribution requested." In doing so, the family court did not cite any statutory basis for the award.

Grace contends the family court erred prejudicially erred because it did not make express findings as required by section 2030. We disagree.

Section 2030, subdivision (a)(2) provides that "[w]hen a request for attorney's fees and costs is made, the court *shall* make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties." (Italics added.) These findings must be explicit. (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050.) "'If the findings demonstrate disparity in access and ability to pay, the court *shall* make an order awarding attorney's fees and costs.' (Italics added.)" (*Ibid.*)

We agree with Grace that the family court did not comply with section 2030, subdivision (a)(2) insofar as the court did not make explicit findings under the statute as required. But Grace makes no attempt to explain how this prejudiced her. (See *In re Marriage of Morton*, *supra*, 27 Cal.App.5th at p. 1051 [appellant must show failure to make findings under section 2030, subdivision (a)(2) was prejudicial].) We affirm the family court's attorney's fee award on that basis alone. (See *ibid.*; *Bianco v. California Highway Patrol*, *supra*, 24 Cal.App.4th at p. 1125.)

In any event, we conclude the error was harmless because it is not reasonably probable that the family court would have ruled differently had it made explicit findings under section 2030, subdivision (a)(2). The family court's findings, although not explicit, show that the court evaluated the proper factors. To begin with, Jerome expressly moved for fees under section 2030, subdivision (a)(2) and argued a fee award was appropriate under the statute's factors. By awarding Jerome $80,000 of the $114,000 (70%) in attorney's fees he requested, the family court found that an award under section 2030, subdivision (a)(2) was "appropriate." The record confirms that there is "a disparity in access to funds to retain counsel" given that Grace makes nearly $1 million per year while Jerome makes about $134,000 per year. At the time of the fee award, Grace had $400,000 in her bank accounts. Given Grace's substantial income and assets and the fact that Jerome sought only $114,000 (or about 11% of Grace's annual income and about 25% of her cash assets), she "is able to pay for legal representation of both parties." We therefore find Grace was not prejudiced by the family court's failure to make explicit findings under section 2030, subdivision (a)(2).

7. *Transmutation of Real Property*

While married, the parties bought a house together on Sierra Heights Drive in Riverside. Grace argued the house was transmuted into her separate property (see § 852) because Jerome executed a notarized Interspousal Transfer Grant Deed (the deed) giving his interest in the property to Grace. Jerome testified that he did not sign the deed and had never seen it before the trial. Grace therefore called the notary as a rebuttal witness.

The notary testified that the parties signed and executed the deed in her presence, which she notarized as part of her routine notarization process.

The family court ruled that the deed was invalid, reasoning that Jerome "testified that he did not sign [the deed]" and the "deficiencies on the face of [the deed] are such that it cannot be proven that [Jerome] signed it." These deficiencies included the lack of the notary's signature on the deed and missing "mandatory language" on the deed. The court also found that the "testimony and documentary evidence received from the notary do not prove" that Jerome signed the deed. The family court thus "set aside" the deed and ruled that the Sierra Heights Drive property was not transmuted into Grace's separate property.

We review the family court's finding that Jerome did not sign the deed for substantial evidence. (See *In re Wozniak* (2020) 59 Cal.App.5th 120, 135; *Ike v. Doolittle* 61 Cal.App.4th 51, 73.) Jerome testified that he did not sign the deed, and the family court found his testimony credible. His testimony was sufficient for the family court to find that he never signed the deed and thus the deed was ineffective to transmute the Sierra Heights Drive house into Grace's separate property. (*In re Wozniak*, *supra*, at p. 135.) We therefore affirm the family court's finding that the house was community property.

    8. *Sanctions*

Grace seeks about $13,500 in sanctions against Jerome and/or his counsel for attorney's fees incurred in opposing his unsuccessful motion to dismiss the appeal and

$5,000 for attorney's fees incurred for preparing her sanctions motion. We deny the request.

Grace filed her notice of appeal on July 1, 2020. The clerk's transcript, prepared by the superior court, was filed in December 2020. The clerk's transcript contained a Notice of Entry of Judgment (the notice) with a file stamp of March 19, 2020. Superior court employee "A. Venegas" signed and dated the notice. Venegas also signed and completed a "Clerk's Certificate of Mailing," which stated that a copy of the notice had been mailed to the parties on March 19, 2020.

About three months later, Jerome moved to dismiss the appeal as untimely filed. Jerome argued the notice triggered the deadline for Grace to appeal, which was 60 days under California Rule of Court, rule 8.104, extended by 30 days by this court's emergency orders caused by the COVID-19 pandemic. Thus, in Jerome's view, Grace had 90 days from March 19, 2020, or until June 17, 2020, to file a notice of appeal, but she did not do so until July 1, 2020.

In her opposition to the motion to dismiss, Grace argued her appeal was timely because the trial court did not mail the notice or the judgment in March 2020, but mailed it on June 9, 2020. Grace claimed the trial court filed the judgment and notice nunc pro tunc on June 9, 2020, but Venegas made a clerical error by stating March 19, 2020, was the date of mailing. Grace noted that Jerome filed a proof of service on June 18, 2020, stating that he served Grace with a copy of the notice on June 15, 2020.

13

After considering Jerome's motion to dismiss and Grace's opposition, this court concluded that it could not determine whether Grace's appeal was timely because the record was unclear. We explained that the superior court's register of actions "contains entries for the judgment on both March 19, 2020 and June 9, 2020," so there was "a conflict in the superior court's records regarding the actual date of service of notice of entry of judgment." We therefore directed the trial court to settle the record as to when the notice was mailed to the parties.

The trial court then held a hearing during which superior court employee (Venegas) testified. She explained that the superior court was shut down because of the COVID-19 pandemic on March 20, 2020, the day after she had begun processing the judgment. Venegas did not return to work until mid-June. When she returned, her supervisor directed her to backdate "anything before the leave" caused by the pandemic shutdown. Venegas therefore finished processing the notice and backdated it to March 19, 2020, but mailed it on June 9, 2020.

After receiving argument and additional evidence from the parties, the trial court found that the judgment was processed and mailed on June 9, 2020, meaning that Grace timely appealed less than a month later. We therefore denied Jerome's motion to dismiss the appeal as untimely.

Grace now moves for appellate sanctions. She contends Jerome knew his motion to dismiss was frivolous. He knew that she timely filed her notice of appeal because he knew that the superior court did not mail the notice until mid-June, 2020. Grace thus

14

seeks $13,472 for the attorney's fees she incurred for opposing the motion and $5,000 for the attorney's fees incurred for the sanctions motion.

Under California Rules of Court, rule 8.276(a)(3), we may impose sanctions on a party for filing a frivolous motion. A motion is frivolous if any reasonable attorney would agree the motion is totally devoid of merit. (See *Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1062.) A motion is totally devoid of merit if there are "no unique issues, no facts that are not amenable to easy analysis in terms of existing law, and no reasoned argument by [the movant] for an extension of existing law." (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1081.) We impose sanctions "sparingly" and "to deter only the most egregious conduct." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 651.)

We cannot say Jerome's motion to dismiss was totally devoid of merit. The clerk's transcript contained a copy of the notice, which reflected that it had been served on the parties on March 19, 2020. As we noted, it was unclear from the superior court's records when judgment was entered and when the court mailed the notice given that the register of actions stated judgment was entered on both March 19, 2020, and June 9, 2020. Moreover, Venegas signed and dated the notice on March 19, 2020, including the Clerk's Certificate of Mailing stating that a copy had been mailed to the parties on that date.

Because we could not discern from the record when the notice was sent to the parties, and thus when the deadline to appeal was triggered, we directed the trial court to

15

settle the record. This required the trial court to receive testimony from Venegas to find when she processed and mailed the notice. It was only with this additional evidence that the trial court—and this court—could clarify the conflicted record and determine when the notice was actually sent. Under these circumstances, Jerome had at least a colorable argument that the superior court mailed the notice on March 18, 2020. Sanctions are therefore not appropriate here. (See *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1262; *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1078.)

Grace argues Jerome knew he had no viable argument that her appeal was untimely filed because he did not receive the notice until around the time he filed the June 18, 2020 proof of service, which stated that he served Grace with the notice on June 15. But given that Venegas completed, signed, and dated the notice on March 19, she attested on the notice that a copy of it had been mailed to the parties on March 19, and the register of actions stated that the judgment had been processed and filed on March 19, Jerome had a non-frivolous argument that Grace's time to appeal began 60 days later, or on June 17, 2020. (See California Rules of Court, rule 8.104(a)(1)(A) 8.104(e); *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 895, 905 [clerk's mailing of file-stamped appealable order along with certificate of mailing satisfies rule 8.104(a)(1)].) Jerome in turn had a non-frivolous argument that Grace's notice of appeal, filed about two weeks later, was untimely. We therefore deny Grace's motion for sanctions. (See

*Avila v. Continental Airlines, Inc.*, *supra*, 165 Cal.App.4th at p. 1262; *Summers v. City of Cathedral City*, *supra*, 225 Cal.App.3d at p. 1078.)

IV.

DISPOSITION

The judgment is reversed in part and affirmed in part. The family court's order charging Grace for the $29,100 withdrawal from the Chase #0218 account and the $86,011 in withdrawals from the Chase #6122 account are reversed. The family court's remaining orders are affirmed. Grace's motion for sanctions is denied. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

SLOUGH
J.

RAPHAEL
J.

17